[No. 10466.  Department One.  May 6, 1913.]

Mabel Jaquith, *Respondent*, v. David A. Worden *et al.*, *Appellants.*[1]

Evidence—Conversations—Hearsay. Where a conversation was only hearsay as to what another was told, it is not error to exclude the balance of it, after part of it was put in evidence.

Municipal Corporations — Streets — Negligent Use — Pleading and Proof—Ordinances. In an action for injuries sustained in an automobile collision, an ordinance fixing the speed limit is admissible in evidence without having been pleaded, where the action was not founded directly on the ordinance.

Appeal—Review—Harmless Error. In an action for injuries sustained in an automobile collision, error, if any, in admitting in evidence a speed ordinance, may be cured by instructions submitting the case to the jury under the general statutes defining the speed limit.

Municipal Corporations—Use of Streets—Driving Automobile—Instructions. Where, on defendant's own testimony, he was guilty of negligence in driving an automobile while so blinded by a street car light that he could not see ahead, it is not error to fail to instruct under what circumstances his rate of speed, if excessive,

[1]Reported in 132 Pac. 33.

would be the proximate cause of the injury, concurring with the
negligence ·of another in leaving an unlighted car in the street,
where the instructions properly defined the facts required to render
him liable; since either would be liable if the negligence of either
concurred to produce the proximate cause.

SAME—UNLIGHTED CARS—STATUTES. Rem. & Bal. Code, § 5568, pro-
viding that every automobile "when driven" on a public road or
street must be lighted during the hours of darkness, applies to cars
left standing in the street.

SAME—UNLIGHTED CARS—LIABILITY OF PARENT FOR ACTS OF SON.
The owner of an automobile is responsible for his son's leaving his
unlighted automobile standing in the street at a place where he was
accustomed to leave it unlighted, if his son knew of the custom and
had used the machine with his consent, express or implied.

APPEAL—REVIEW—HARMLESS ERROR. A defendant is not preju-
diced by failing to instruct that another defendant's act was neg-
ligence *per se*, where his own negligence concurred to produce the
result, and where the jury found that the other defendant was neg-
ligent.

MUNICIPAL CORPORATIONS—USE OF STREETS—UNLIGHTED CARS—EVI-
DENCE—ADMISSIBILITY. Evidence that defendant habitually left his
unlighted car in the street in front of his house is admissible upon
an issue as to whether he left it there on the night in question, and
upon an issue as to whether he invited his son to follow the custom.

Appeal from a judgment of the superior court for Pierce
county, Clifford, J., entered December 28, 1911, upon the
verdict of a jury rendered in favor of the plaintiff, in an
action for personal injuries sustained by a pedestrian struck
by an automobile. Affirmed.

*Hudson, Holt & Harmon* and *Davis & Neal*, for appellants
Worden and Wade.

*Bates, Peer & Peterson* and *Emil N. Stenberg*, for appel-
lant Murphy.

*Grant A. Dentler*, for respondent.

GOSE, J.—The plaintiff was run down by an automobile
owned by the defendant Worden and driven by the defendant
Wade, who was then the agent and servant of Worden. She
brought this action, alleging that she met her injury in

consequence of the concurring negligent acts of all of the defendants. There was a verdict and judgment in her favor, from which all the defendants except Floyd B. Murphy have appealed.

The facts, either admitted or not controverted, are these: The appellant Murphy, at the time of the accident, lived on the west side of North Alder street, a street running north and south in the city of Tacoma, at or near the northwest corner of that street and North Twenty-fifth street, which intersected it at right angles. North Alder street was paved and a double-tracked electric street car line, known as the Point Defiance line, was operated upon it. The distance between the west rail of the west car track and the curb in front of Murphy's residence was about fifteen feet. Late in the afternoon or early in the evening upon which the respondent was injured, an automobile owned by the appellant Murphy was left standing along the curb in front of his residence, without any light upon it. Between seven and seven-thirty o'clock in the evening on the 21st day of September, 1910, the Worden automobile, traveling south on the west side of Alder street and driven by Wade, struck the Murphy car, was deflected from its course, and ran down the respondent, who was upon the cement walk at the point of intersection of the two streets. She had just alighted from a northbound car running on the west track, and had reached that point when she was run down. There was evidence which warranted the jury in finding, either that the appellant Murphy left his automobile in the street unlighted, intending that his son Floyd should use it, or that the former habitually used the street in front of his residence in both the daytime and the nighttime as a place to stand his unlighted machine; that his son Floyd knew that fact, and that if the latter left the machine there on the night in question, he followed a custom established and approved by the father. There was also testimony which would have justified the

jury in concluding that it was dark when the respondent was injured.

The appellant Wade testified, that his machine was moving at a speed of six or eight miles an hour at the time he struck the Murphy car; that he did not see it until he "hit it;" that he did not think he could have seen a person where the Murphy machine stood; that there was a street car at Twenty-fifth street which had a "very powerful headlight," which blinded him so that he "could not see anything at all." This was probably the car from which the respondent had alighted. Other witnesses said that Wade was driving his car twenty-five miles an hour. The Murphy machine was facing north. Wade further said that the right hub cap of his machine struck the front wheel of the Murphy machine; that the force of the impact threw him to the left side of his machine, causing him to touch the lever with his foot and accelerating the speed of his car.

Worden and Wade have joined in a brief. Murphy has filed a separate brief. We will first consider the appeal of Worden and Wade. In respect to them, the court instructed the jury that negligence consists in the doing of an act or a series of acts without the exercise of reasonable care, or in doing an act or acts in violation of an express law or ordinance; that reasonable care is that degree of care that a reasonably careful and prudent person would use under similar circumstances; that, if they should find from the evidence that the street at the point of the collision was generally traveled, Wade was bound to anticipate that persons and vehicles might be traveling thereon; that, if they found from the evidence that he was blinded by the headlight of an approaching street car, they should determine, in view of all the attending circumstances shown by the evidence, whether it was his duty to stop his machine and not proceed until he could see the street and objects ahead, and if he failed to do so, whether such failure was negligence. The court further instructed at the request of these appellants:

"In order to find the defendants Wade and Worden liable you must find that not only did the car of Worden strike the car of Murphy and collide with the plaintiff as a result thereof, but you must also find that the handling and operation of the Worden car before or at the time of the accident or immediately succeeding it was negligent."

The court also instructed:

"In determining whether the defendant Ralph Wade was guilty of negligence at the time the automobile he was then using collided with the automobile of defendant Edward D. Murphy, you may take into consideration the rate of speed he was then driving such automobile, the manner in which he was operating the same, whether he had proper and reasonable lights thereon to enable him to see objects that might and did come in the path and course he was traveling in time to avoid colliding with and hitting them, and whether he could see objects or obstructions ahead of him on account of any light that might be shining or thrown in his face, and whether he was driving such automobile at a faster rate of speed than he could bring said automobile to a stand still within the distance that he could plainly see objects and obstructions ahead of him, together with all other facts and circumstances shown by the evidence and testimony of ·this case.

"If you find from a fair preponderance of the evidence in this case that the defendant Ralph Wade, at the time of the collision of the automobile he was using with the automobile of defendant Edward B. Murphy, was in charge of such automobile on a street in the city of Tacoma, and at a place on said street which was within a thickly settled portion of said city of Tacoma, and was at the time and place driving such automobile at a rate of speed faster than twelve miles per hour, and that by reason thereof and on account thereof you further find that the plaintiff was injured because of such rate of speed being faster than twelve miles per hour at such a place, then you are instructed that the defendants David A. Worden and Ralph Wade would be liable for the consequences of such rate of speed at such a place.

"No person driving or in charge of any automobile on any public street has a legal right to drive the same at any speed greater than is reasonable and proper, having regard

to the traffic and use of the street by others, or so as to en-
danger the life and limb of any person; and if you find from
a fair preponderance of the evidence in this case that the de-
fendant Ralph Wade, at the time the automobile he was us-
ing collided with the automobile of defendant Edward D.
Murphy, was driving the automobile in his charge at a speed
greater than was reasonable and proper, having regard to
the traffic and use of said street where he was then driving
said automobile by other persons and the public, or was then
and at that place driving such automobile at such a rate of
speed as to endanger the life and limb of any other person,
and because of such rate of speed you further find that the
plaintiff was injured, then you are instructed that the de-
fendants David A. Worden and Ralph Wade would be liable
for the consequences of such rate of speed at such time and
place."

The last two instructions embody the provisions of the
statute, Rem. & Bal. Code, §§ 5571, 5572. The court also in-
structed:

"If you believe from a fair preponderance of the evidence
in this case that, at the time of the collision between the two
automobiles, the defendant Ralph Wade was driving the
automobile in his control in a reasonably careful manner and
at a reasonable and lawful rate of speed, and with proper and
sufficient lights thereon and that, by reason of the circum-
stances existing at the place of the collision, he did not see
the automobile of the defendant Murphy and that he should
not be charged with the consequences, under the circum-
stances, of not having seen the automobile, and that, *after*
the collision between the two automobiles, the said Ralph
Wade was thrown from his seat and as a result of his be-
ing so thrown, his foot, or other part of his body, came in
contact with the lever that controls the speed of the auto-
mobile, without design, purpose or fault on his part, and as
a result thereof, the automobile in which he was riding sud-
denly acquired a greater speed and was beyond his control
and, as a result thereof, ran over the plaintiff, then you
will find a verdict in favor of the defendants, Worden and
Wade."

The appellant Worden testified that he was not present
when the accident happened. A witness for the respondent

testified that Worden told him that, at the time Wade crossed
the street car track where it curves at the north end of the
block upon which the accident happened, he saw an approach-
ing car and increased his speed.   These appellants then
sought to show that in the same conversation he said that,
after crossing the track, Wade slowed down.   This testi-
mony was rejected, and error is assigned to the ruling.   The
contention is that, where a part of a conversation is put in
evidence, the adverse party is entitled to prove the remainder
of the conversation, particularly in so far as it modifies or
explains the part admitted.   This is confessedly the rule,
and in most instances any material limitation upon it would
be prejudicial.   The fact that Worden was not present, how-
ever, takes the case out of the rule.   The evidence as a whole
shows that he had only repeated what another had told him.
The court rightly ruled that immaterialities, which here
took the form of hearsay evidence, would not be further pur-
sued.

The statute, Rem. & Bal. Code, § 5571, provides that no
person shall drive an automobile at a rate of speed faster
than one mile in five minutes on any public road or street
"within the thickly settled" portion of any city or village.
Section 5572, provides that no person shall drive such a
machine in any public street at any speed greater than "is
reasonable and proper," having regard to the traffic and
use of the way by others, "or so as to endanger the life or
limb of any person."   The respondent was permitted to put
in evidence an ordinance of the city of Tacoma making it
unlawful for any person to run an automobile "on any of
the public streets" in the city at a rate of speed faster than
twelve miles an hour, without having pleaded the ordinance;
the allegation in the complaint being that the speed of the
car was in excess of six miles an hour.

It is argued by the appellants that, where there are al-
legations of negligence actionable at common law, but the
allegations are not such as to indicate an intention to plead

or rely upon the breach of an ordinance, the ordinance is not admissible as evidence. The respondents meet this argument by saying that it is only necessary to plead an ordinance where it forms the basis of the action, such as an action to enforce the payment of a tax, license, or penalty, under an ordinance, or to enforce a duty imposed by ordinance. The weight of authority is with the appellants. 28 Cyc. 393. But we think the better view is that, where the action is not founded upon the ordinance the ordinance may be admitted in evidence like any other fact or circumstance material to the subject-matter of the action.

"It is of course unnecessary to plead the ordinance when the action is not founded upon it, but nevertheless in such cases it is, in some jurisdictions, admitted in evidence on the question of negligence." 15 Ency. Plead & Prac., p. 427.

See, to the same effect, *Brasington v. South Bound R. Co.*, 62 S. C. 325, 40 S. E. 665, 89 Am. St. 905; *Robertson v. Wabash, St. Louis & Pac. R. Co.*, 84 Mo. 119.

In the case last cited the court said:

"The plaintiff's cause of action was not founded on the ordinance. The ordinance furnished no cause of action, and for these reasons it was unnecessary to plead it. The existence of the ordinance was only a fact bearing upon the conduct of the managers of the train, and whether the defendant was guilty of negligence at the time and place, resulting in loss to the plaintiff, depends upon all the facts legally bearing upon their action. If defendant was running its trains in violation of law at the time, such fact is competent evidence in support of the charge of negligence. *Goodwin v. Chicago, Rock Island & Pacific R. R.*, 75 Mo. 73; *Lynn v. R. R.*, 75 Mo. 167."

Moreover, we think that, if the error be conceded, it was not prejudicial. The court instructed under the terms of the statute and without reference to the ordinance. *Breese v. Hunt*, 67 Wash. 398, 121 Pac. 853.

It is next contended that the court did not sufficiently define proximate cause. A reference to the instructions as we

have set them forth will disclose that the court clearly de-
fined the facts which the jury were required to find in order
to hold these appellants responsible. They say that the court
did not instruct the jury "under what circumstances they
might treat Wade's rate of speed," if they believed it to
have been excessive, "as one of the conditions but not the
proximate cause of the injury." We think there was no
error in this respect. Assuming the negligence of the Mur-
phys, it is obvious that the concurring negligence of all the
parties caused the injury. The standing machine was harm-
less until it was struck by the machine of these appellants.
When these agencies met, the one active, the other passive,
a new condition was created which culminated in the respond-
ent's injury. When the negligence of any person concurs
with that of another to produce the proximate cause of an
injury, either is chargeable as if solely responsible for such
cause. *Thoresen v. St. Paul & Tacoma Lumber Co.*, ante p.
99, 131 Pac. 645, 132 Pac. 860.

"It is fundamental, of course, that one cannot recover for
injuries against another whose act or omission was not, or
did not contribute to, the proximate cause of such injury.
But it is equally true that, where a negligent act or omission
sets in operation a train of occurrences resulting naturally in
the injury complained of, such negligent act or omission is
deemed to have been the proximate cause, or to have contrib-
uted thereto." *Akin v. Bradley Eng. & Mach. Co.*, 48 Wash.
97, 92 Pac. 903, 14 L. R. A. (N. S.) 586.

"If the concurrent or successive negligence of two per-
sons combined together results in an injury to a third per-
son, he may recover damages of either or both, and neither
can interpose the defense that the prior or concurrent negli-
gence of the other contributed to the injury. Thompson
on the Law of Negligence, § 75." *Pacific Tel. & Tel. Co. v.
Parmenter*, 170 Fed. 140.

"If the city by its negligence put in motion a cause which
continued to the end and without which the injury would
not have occurred, although a third person may have con-
tributed to the final result, yet the city's negligence must be
held to be a proximate cause of the injury." *Knouff v.*

*Logansport*, 26 Ind. App. 202, 59 N. E. 347, 84 Am. St. 292.

"A proximate cause is one that leads to or produces, or directly contributes to, producing the result or loss. If the loss is not such as would likely or probably result from the negligence of the defendant he is not liable, since he can ordinarily be held responsible only for the probable results of his negligence, which he should have foreseen." *Western Union Tel. Co. v. Milton*, 53 Fla. 484, 43 South. 495, 125 Am. St. 1077, 11 L. R. A. (N. S.) 560.

It may be true, as argued, that Wade was not required to anticipate that an unlighted machine was ahead, but he was required to anticipate that others might be using the street. The court was not required at its peril to segregate and define with all its limitations each circumstance which may or may not have contributed to the injury. This is particularly true in the light of Wade's testimony. He said, that he was so blinded by the rays of the headlight of the approaching street car that he could not see ahead; that he could not have seen a person, and that he did not see the machine until he struck it; that he was then thrown from his seat, his foot striking the lever, causing the car to increase its speed. Under his own testimony he was guilty of most pronounced negligence. He was proceeding in utter disregard of the presence of other travelers or objects ahead of him. Had he been without eyes or had he closed them, he would have been in no worse position. To proceed at all in the face of those conditions was at his peril. *Steuding v. Seattle Elec. Co.*, 71 Wash. 476, 128 Pac. 1058. In the face of this testimony, it is folly to argue that any refinement of the instructions might have caused a different verdict. There was no error, either in the instructions given or in refusing to give the requested instructions.

In respect to the appellant Murphy, the court, after defining negligence as heretofore stated, instructed the jury:

"If you believe from a fair preponderance of the evidence that the accident and injury to the plaintiff occurred by

reason of negligence on the part of the defendant Wade, and that the defendant Edward D. Murphy was also negligent, either by his own act or by the act of the defendant Floyd B. Murphy, done or performed with his authority, expressed or implied, and that but for the negligent act of the defendants Murphy the accident would not have occurred, then and in that event you should find a verdict against all of the defendants. If you believe from a fair preponderance of the evidence in this case that the defendant Edward D. Murphy was accustomed to leave his automobile in the street at or about the place where it was at the time of the collision between it and the automobile of the defendant David Worden, without lights, and at a time when it was not readily seen by those approaching, and that the defendant Floyd B. Murphy was aware of the custom and that the defendant Floyd B. Murphy had been using the automobile of the defendant Edward D. Murphy, prior to the accident, with his authority express or implied; and if you further believe from a fair preponderance of the evidence that after he ceased to use it he placed it at the place where Edward D. Murphy was accustomed to leave it, without lights, at a time when it could not readily be seen by the public approaching it, then and in that event the said Edward D. Murphy would be responsible for the consequences of the act of the said Floyd B. Murphy in so leaving the machine, as the conduct of the said Edward D. Murphy in leaving it there under such circumstances would be an implied sanction of his so doing; or, if while the automobile of the defendant Edward D. Murphy was standing in front of his house just prior to the accident he knew it was there, and that with such knowledge he failed to see that it was either removed, or provided with proper and sufficient lights, then it makes no difference in this case whether the automobile was placed there by him, or by his son Floyd B. Murphy, Edward D. Murphy is liable, and if you find as I have stated, that he knew it was there and did not remove it, or furnish it with sufficient lights, and permitted it to remain at the place it was until it became so dark that it could not be readily seen by any one lawfully using the public street, and that by reason of the car being so left there the automobile of David Worden collided therewith and injured the plaintiff, then the defendant Edward D. Murphy is liable."

It is argued that the instruction is wrong in two respects: (1) It is said that it is not negligence, as a matter of law, to leave an unlighted automobile standing at the side of the street during the hours of darkness, and (2) that if Floyd Murphy left the machine at the place where the collision occurred, the father is not liable unless he did the act as his servant or agent. The first point suggested is controlled by the statute, Rem. & Bal. Code, § 5568. It provides:

"Every automobile or motor vehicle when driven on any public road, highway, park or parkway, street or avenue within this state shall, during the hours of darkness, have fixed upon some conspicuous part thereof, at least one lighted lamp, showing white to the front and red to the rear."

An automobile does not cease to be "driven" when stopped or left standing on a public highway during the hours of darkness. It cannot be said that the driver of such a machine must carry lights while it is moving, but that he may stop it during the hours of darkness in the roadway, turn off the lights, and leave it standing, without violating the law. The statute must be read with reference to its plain spirit and intent. Its spirit may not be destroyed by narrowing it to the literal meaning of a single word. Public highways are designed for travel in all lawful ways, by both pedestrians and those driving vehicles, and the driver of a vehicle does not cease to be a driver or traveler when he stops his machine in the street. As was said in *Smethurst v. Barton Square Ind. Cong. Church*, 148 Mass 261, 19 N. E. 387, 12 Am. St. 550, 2 L. R. A. 695:

"In order to be a traveler, it is not necessary that one should be constantly moving, if he is a pedestrian, or that the vehicle he drives, or that in which he is conveying goods, if he is using one, shall be continuously in motion. It would certainly be impossible to use the highways conveniently for the ordinary purposes of business or social life with teams or lighter carriages, if occasional stops were not permitted to enable those using them to load and unload teams, to receive and deliver goods, to enter shops and stores, and to

make brief calls of business or even of a social character. During these stops, if reasonable in duration, one should not lose his rights as a traveller, and the protection thus afforded to his person or property."

In *Slater v. Cave*, 3 Ohio St. 80, the principle which requires the literal meaning of words to be narrowed or expanded to carry out the obvious intention of the law is thus stated:

"In the interpretation of statutes, words clearly expressive of the sense and manifest intention of the law are to be taken literally. But it is a fundamental rule of construction, that the language of a statute is to be interpreted according to the sense in which the terms are employed and the plain intention of the legislature. The great object of the rules and maxims of interpretation has been to discover the true intention of the law. We are taught by the maxim, *Qui haeret in litera haeret in cortice*, that he who considers the mere letter of an instrument, goes but skin deep into its meaning. Regard must be had to the real object of the law, and the effect and substance of the subject matter, and not barely to the nicety of form or circumstance. The reason, intent, and spirit of a law, therefore, must often prevail over the literal import of the term employed. The circumstances and relations of things change, so that after the lapse of time, we must sometimes give up either the *letter* of a law or its *true intent*."

Touching the second point urged, many authorities are cited to the effect that the liability of a parent for the tort of a child is governed by the principles of law applicable to the relation of principal and agent or master and servant, and that it does not arise out of a mere relation of parent and child. This may be conceded, but it does not aid the appellant. The court did not instruct on the theory that a parent is liable for the tort of a child based on the relation of parent and child, nor did the respondent so contend. As we have said, there was abundant evidence tending to prove that the appellant Murphy habitually stood his unlighted car in the street in front of his house in both the daytime

and the nighttime. The court said to the jury in effect, that if they found that to be a fact, that Floyd Murphy knew of the custom and had used the machine with the consent of the appellant, "express or implied," and had returned it to the place where the appellant was accustomed to stand it, and left it unlighted as the appellant was accustomed to leave it, then the appellant would be liable upon the ground of an "implied sanction" to so leave it. We think the instruction was right. The appellant may not complain if his son used the machine with his consent, and left it standing at the place and in the condition that he himself was accustomed to leave it. In short, if he had two places for standing his car and the son left it at either, it then ceased to be in the care of the latter as between them, and the appellant became responsible to third parties for its position and condition.

Error is assigned in the refusal of the court to instruct that it was negligence *per se* for Wade to proceed with his machine while blinded by the rays of the headlight of the approaching street car. The error, if any, is not available to Murphy, (1) because his liability must rest on some negligent act of his own which proximately contributed to the respondent's injury; and (2) because the jury found that Wade was negligent.

It is contended that it was error to admit evidence showing that Murphy habitually stood his unlighted car in the street in front of his house after dark. We think the testimony was admissible, (1) as a circumstance tending to prove that he personally left the car there on the night in question, and (2) as a circumstance tending to show an invitation to the son to follow the custom which he had established. *Cohen v. Mayor etc. of New York*, 113 N. Y. 532, 21 N. E. 700, 10 Am. St. 506, 4 L. R. A. 406; *Robertson v. O'Neill*, 67 Wash. 121, 120 Pac. 884.

It is argued that the evidence is insufficient to show, (1) the negligence of Floyd B. Murphy, and (2) that the appellant is not liable even though there be evidence to support the

verdict as against the son. We think both contentions are without merit. There was abundant evidence to take the case to the jury, and the judgment is affirmed as to all the parties.

CROW, C. J., MOUNT, PARKER, and CHADWICK, JJ., concur.