[No. 12703.    Department Two.    November 6, 1915.]

FRED EHLERS *et al.*, *Respondents*, v. UNITED STATES FIDELITY
& GUARANTY COMPANY, *Appellant*.[1]

NOTARIES—ACKNOWLEDGMENT—NEGLIGENCE — QUESTION FOR JURY.
The negligence of a notary public in taking the acknowledgment of
impostors, upon a mere introduction by a person of good reputation,
is a question for the jury, in view of Rem. & Bal. Code, § 8761, re-
quiring him to certify to their identity as the parties described in
and who executed the instrument.

NOTARIES—NEGLIGENCE—FORGERY—EVIDENCE. In an action to re-
cover on the liability of a notary public for negligently taking the
acknowledgment of impostors to a mortgage upon property owned
by others of the same name residing in another state, to allege and
prove a forgery it is necessary to show that the nonresidents are
owners of the property mortgaged.

Appeal from a judgment of the superior court for Spo-
kane county, Kennan, J., entered November 21, 1914, upon
the verdict of a jury rendered in favor of the plaintiffs, in an
action on a surety bond. Affirmed.

*Cullen, Lee & Matthews*, for appellant.

*Samuel Edelstein*, for respondents.

MAIN, J.—The purpose of this action was to recover from
the surety upon the bond of a notary public. The case was
tried to the court and a jury. The defendant's motion at the
close of the plaintiffs' case for a nonsuit, and its motion for a
directed verdict at the close of the case, were denied. The
jury returned a verdict in favor of the plaintiffs for the sum
of $696. Motion for a new trial being made and overruled,
a judgment was entered upon the verdict. The defendant
appeals.

The facts are substantially as follows: On May 1, 1913,
one J. E. Moe was engaged in the real estate business in the
city of Spokane. At this time he had no office, but was what

[1]Reported in 152 Pac. 518.

is commonly known as a curbstone broker.   He had lived in .
Spokane at different times for about thirteen years, and had
been engaged in the real estate business intermittently dur-
ing that time.   On the date mentioned, Moe became acquainted
with a man who gave his name as Dan Brown.   The meeting
of these two men occurred on Riverside avenue near the en-
trance to the Rookery building.   Brown was not introduced
to Moe by any person.   The two men became acquainted, so
far as the acquaintance extended, by engaging in conversation
at the place mentioned.   It was customary for people to con-
gregate on the corner near the entrance to the Rookery
building, and Moe, like other real estate men, picked up what
business he could by meeting people at this place.

Brown advised Moe, in one of the conversations which they
had, that he desired to secure a loan of $1,500 upon a certain
section of land in Adams county, Washington.   Moe inter-
viewed some of his friends in attempting to secure the money,
but was unsuccessful.   He then went to. the office of one
George H. Layman, who was engaged in the real estate busi-
ness, and asked him if he knew where he could get the money.
Layman stated that he thought he could get the money.   Moe
thereupon took Brown to Layman's office and introduced him
as Mr. Brown, and, as he testified, "turned him over to Mr.
Layman to get the loan."   Layman, however, failed to secure
the money as he had expected.

A few days thereafter, one Charles Goodno went to Moe
and asked him if Brown had secured the loan.   Where Goodno
got the information that Brown was desiring a loan does not
appear.   Upon being advised by Moe that, so far as he knew,
Brown had not secured the loan, Goodno stated that he
owned 320 acres of land, which he described, which he valued
at $3,500, upon which there was a mortgage of $1,800, and
that if Brown would accept a deed for this land, and assume
the mortgage thereon, and also execute to him, Goodno, a
mortgage for $2,500 upon the land in Adams county, which
Brown was offering as security for the loan, that he would

give Brown $1,000. Moe communicated this proposition to Brown, who said that he would consider it. Moe did not see Brown again until about a week later, when he went to Layman's office on other business and found there present Goodno, Layman, Brown, and a lady, who was introduced to him by Layman as Mrs. Brown. This lady was just signing the $2,500 mortgage, and Layman requested Moe to sign as a witness, which he did. Layman was a regularly appointed, qualified, and acting notary public. He took the acknowledgment of the Browns in the usual statutory form. The land upon which the mortgage was given was owned by Dan Brown and Anna Brown, his wife, who at the date of the execution of the mortgage were living in Minnesota. The Browns who signed and acknowledged the mortgage were not the owners of the land described therein, but were impostors, and, since the execution of the mortgage, have not been seen nor heard from.

On July 16, 1913, Goodno borrowed from the respondents the sum of $600. To secure this sum he executed to them a promissory note and assigned the $2,500 mortgage which had been executed by the Browns. The $600 note became due and was not paid. Thereupon the plaintiffs investigated the financial standing of Goodno and found him to be insolvent. The whereabouts of Layman could not be ascertained. The present action was brought against the defendant, as surety, upon Layman's bond as notary public. It was claimed that Layman had been negligent in taking the acknowledgment to the mortgage of the Browns, who were impostors. So far as the record shows, Layman had no knowledge of Brown other than the mere introduction by Moe, who was a man of good reputation. When the introduction occurred, no questions were asked by Layman as to the time during which Moe had known Brown, or the nature of the acquaintance. Who introduced Mrs. Brown to Layman and vouched for her identity does not appear.

The principal question in this case is whether a notary public exercises due care when he takes the acknowledgment of a person who is merely introduced to him by a man who bears a good reputation in the community. If a notary performs his full duty in taking an acknowledgment of a person thus introduced, the judgment in this case should be reversed. If, on the other hand, the exercise of reasonable care required the notary to make further inquiry, either of the person making the introduction, or from other persons, as to the identity of the person whose acknowledgment he takes, the judgment should be affirmed.

Section 8761, Rem. & Bal. Code (P. C. 143 § 39), prescribes the form for a certificate of acknowledgment. The certificate which Layman made was that required by the statute. According to this statute, there are two essential matters to which the officer must direct his attention in taking an acknowledgment. They are the identity of the person appearing before him as the party described in and who executed the instrument, and the acknowledgment of that party that he executed the same as his free and voluntary act and deed. While the taking of an acknowledgment of the execution of a mortgage is in its nature a ministerial act and not a judicial one (*Barnard v. Schuler*, 100 Minn. 289, 110 N. W. 966; 1 Cyc. 557; and 1 Am. & Eng. Ency. Law, 2d ed., 485), yet it is a matter of grave importance. Upon the fidelity with which this duty is discharged, depends the title to real estate and the prevention of litigation. The courts of the various states which have passed upon the question are not in harmony upon the rule by which it can be determined whether the notary has exercised reasonable care in the performance of his duty in taking acknowledgments. There seems to be no disagreement upon the proposition that he must exercise reasonable or ordinary care, such as reasonably prudent and competent notaries exercise in taking and certifying acknowledgments. The chief divergency of view arises over the question as to when he has

performed this duty and when he has not. This conflict of authority, however, is largely due to the difference in statutes of the various states which define notaries' duties. For this reason, a review of the numerous cases decided by courts construing statutes which are materially different from the statute of this state will not be undertaken. The review of authorities will be confined to the cases where the form of acknowledgment was substantially the same as that required in this state.

The supreme court of Minnesota, the statute of that state being the same as the statute of this state, has held, in a case in which the facts in all essential particulars are the same as the facts in the present case, *Barnard v. Schuler, supra,* that the question whether the notary had exercised reasonable care was properly submitted to the jury, and that the verdict to the effect that the notary was negligent in taking the acknowledgment there in question was supported by the facts. In the course of the opinion it was said:

"A notary public or other officer in taking an acknowledgment may be deceived, no matter how careful he may be in investigating the identity of a party who represents himself to be the person described in and who executed the instrument; and to hold the officer in such cases absolutely liable in case it should afterwards appear that he was mistaken and his certificate was in fact untrue is too rigid a rule to be practical or just. The bond of a notary public in this state by the terms of the statute is conditioned for the faithful discharge of the duties of his office, and when he accepts the office and gives the bond he represents to the world that he is competent to discharge the duties of his office, and it cannot be said that he has faithfully discharged the duties of his office in a given case if he neglects to exercise such care as reasonably prudent and competent notaries would exercise in taking and certifying acknowledgments. If he fails to exercise such due care, and loss results therefrom, he and his sureties are liable for the loss resulting proximately therefrom. It is not a defense in such a case that he acted in good faith and did the best he knew how;

for, if he does not personally know the party appearing before him, he must inform himself as to his identity.

"We accordingly hold that a notary public is not a guarantor of the absolute correctness of his certificate of acknowledgment, nor does he undertake to certify that the person acknowledging the instrument owns or has any interest in the lands therein described; but he does undertake to certify that the party personally appearing before him is known to him to be the person described in and who executed the instrument. If the notary does not personally know the party appearing before him, he should proceed with caution, and either decline to certify to the acknowledgment or investigate the question of the identity of the party with such care and prudence as the gravity of the case demands, and only certify to his identity upon being clearly satisfied of the fact as a result of such investigation. If a notary public certifies to an acknowledgment of an instrument without such personal knowledge and investigation, he is guilty of negligence, and he and his sureties are liable for all damages proximately resulting therefrom."

It was there held that the trial court did not err in submitting to the jury the question as to whether the notary was negligent.

In *State Nat. Bank v. Mee*, 39 Okl. 775, 136 Pac. 758, the question came before the supreme court of Oklahoma upon a complaint to which the trial court had sustained a demurrer. It was there held that a notary public is guilty of negligence if he certifies that he knows a person on mere introduction without further inquiry or proof of the identity. In the course of the opinion it was said:

"A notary is guilty of negligence if he certifies that he knows a person whom he does not know, or certifies that he knows a person on a mere introduction (without further proof) by some third person, or if he certifies that he knows a person to be the identical person who executed an instrument, without such person actually appears before him, and personally acknowledges the instrument in his presence. A notary may be deceived, no matter how careful and painstaking he may be, in the matter of making the identification; but that does not change his duty, or excuse him from using

such care and prudence as may be required to convince him that the person who appears before him is in fact the person he claims to be."

In *Commonwealth, for use of, Green v. Johnson*, 123 Ky. 437, 96 S. W. 801, 124 Am. St. 368, it is held that, where the acknowledgment is taken upon mere introduction without further proof, and damages result, it was for the jury to determine whether there had been an exercise of reasonable care and diligence.

In *Wood v. Bach*, 54 Barb. (N. Y.) 134, and in *Howcott v. Talen*, 133 La. 845, 63 South. 376, 49 L. R. A. (N. S.) 45, a view is expressed which is not in harmony with the courts of Minnesota, Oklahoma, and Kentucky. The rule supported by the appellate division of the supreme court of New York in the *Wood* case, and the supreme court of Louisiana in the *Howcott* case, is that a notary who takes the acknowledgment of a person whom he does not know, upon the introduction by a person who bears a good reputation, has exercised reasonable care in the discharge of the duty of his office as a matter of law. The rule of the courts of Minnesota, Oklahoma, and Kentucky is that a notary who takes the acknowledgment of a person whom he does not know, upon mere introduction by a person who bears a good reputation and in whom he has confidence, does not exercise reasonable or ordinary care, as a matter of law, in the performance of the duty of his office, but that the question whether he has exercised due care is a question of fact to be determined by the jury. We think the better rule is that supported by the Minnesota, Oklahoma and Kentucky cases.

It is true that the notary, no matter how careful he may be in making the identification, may be deceived. But that does not change his duty, or excuse him from exercising reasonable care in determining the identity of the party whose acknowledgment he takes. The parties are before the notary, and the opportunity is present for him to make such inquiry or investigation as will convince a reasonably

prudent and competent notary that the person whose ac-
knowledgment is taken is in fact the person he claims to be.
The property owner, the title to whose property may be
clouded by a forged instrument and a false acknowledgment,
and who may be put to litigation and expense in clearing the
title of such cloud, and the person who parts with something
of value relying upon the notary's certificate, have not an
equal opportunity to protect themselves against the making
of the forged instrument or the taking of the false acknowl-
edgment.   If the notary exercises reasonable care and is,
notwithstanding this fact, deceived, he has performed his
duty.   Under the facts in this case, we think the trial court
did not err in submitting the question to the jury as to
whether or not the notary exercised reasonable care in taking
the acknowledgment to the mortgage of the Browns, who
were impostors.

Error is also sought to be predicated upon the ruling of
the trial court declining to strike from the complaint the
allegations that the land covered by the mortgage was owned
by Dan Brown and Anna Brown who resided in Minnesota,
and in receiving evidence in support of this allegation upon
the trial.   But this contention cannot be sustained.   The
Dan Brown and Anna Brown residents of Minnesota were
the owners of the land.   The Browns who executed the note
and mortgage were impostors.   To make out a case, it was
necessary that the respondents allege and prove that the
mortgage was a forgery.   To do this, it was necessary to
show that the Minnesota Browns were the owners of the
property and that they did not execute the mortgage.

The judgment will be affirmed.

MORRIS, C. J., ELLIS, and FULLERTON, JJ., concur.