[No. 23688.   Department One.   October 18, 1932.]

LEE JAMES, INC., *Appellant,* v. H. W. CARR *et al.,*
*Respondents.*[1]

*Mifflin & Mifflin* and *Marion Edwards,* for appellant.
*Lundin, Barto & Devin,* for respondents.

HERMAN, J.—Plaintiff, in an amended complaint, set
forth its cause of action.   Omitting the prayer and the
first paragraph thereof, in which paragraph were alle-
gations setting forth the relationship of the parties,
the amended complaint contained the following allega-
tions:

"(2)   That during all times herein mentioned said
defendant, H. W. Carr, was a duly appointed, quali-
fied and acting notary public under the laws of the
state of Washington; that said defendant, Globe In-
demnity Company, for value, became surety upon the
bond of its co-defendant as such notary in the sum of
$1,000, conditioned that said individual defendant
'shall faithfully discharge the duties of his said of-
fice according to law.'

[1]Reported in 14 P. (2d) 1113.

30

"(3) That heretofore, and on, to-wit: the 1st day of March, 1930, said individual defendant in writing duly certified and acknowledged that on said first day of March, 1930, there personally appeared before him one Earl E. Anderson, to him personally known to be the individual described in and who executed, subscribed to and affirmed a certain purported bill of sale, being an instrument of writing, of date January 25th, 1930, a true and correct copy of which instrument is hereto annexed, marked Exhibit 'A,' and made a part hereof, wherein and whereby the said Earl E. Anderson purported to transfer and convey to one H. S. Kimmel one certain Pontiac automobile, motor No. P-345135, with equipment, for a consideration of $515; and that thereupon said individual defendant caused his signature and notarial seal to be affixed unto said instrument and delivered the same into the possession of the said person purporting to be Earl E. Anderson.

"(4) That at said time and for a long time prior thereto, a custom and practice had existed in the city of Seattle to have bills of sale covering motor vehicle transactions acknowledged before a notary public; that said custom and practice had grown up due to the fact that automobile, finance and discount companies handling, dealing in and loaning money upon automobiles and commercial paper, had at all times refused to accept or rely upon any bill of sale or other indicia of title that was not acknowledged before a notary public, in order that the identity of the person purporting to execute said instrument might be authenticated, acknowledged and certified; that said custom and practice was of long standing and common knowledge in said city of Seattle and was known or should have been known to the defendants.

"(5) That in truth and in fact, said person purporting to be Earl E. Anderson was not such person but was in fact the said H. S. Kimmel, vendee under said bill of sale.

"(6) That on the 1st day of March, 1930, and prior to the taking by said individual defendant of the acknowledgment to said bill of sale, said H. S. Kimmell appeared at the place of business of plaintiff, with possession of said automobile and with a bill of sale

of date January 25, 1930, without notarial certificate or acknowledgment, purporting to evidence the transfer of title of said automobile to said Kimmell, as of said date, from said Earl E. Anderson; that the above named plaintiff examined and inspected said document and finding the same to be without acknowledgment, notified said H. S. Kimmel, that it was not in a position to and would not make any loan upon said automobile nor deal with said Kimmel in respect of said automobile, unless and until said bill of sale should have been acknowledged before a notary public; that said H. S. Kimmel thereupon departed from the place of business of plaintiff and later and on said day procured the acknowledgment of said bill of sale before said defendant notary, for such purpose representing himself as the said Earl E. Anderson, and the said defendant notary as of said date of March 1st, 1930, took said acknowledgment to said bill of sale, and that thereupon the said H. S. Kimmel, armed with said bill of sale, did on said 1st day of March, 1930, return to the place of business of plaintiff representing himself to be the owner of the automobile described in said instrument, and exhibited said instrument so acknowledged to plaintiff, and that plaintiff in reliance of said acknowledgment and certification of said individual defendant thereto, for value, accepted from said defendant a chattel mortgage upon said automobile for the sum of $337.50, covering an actual loan of $250 cash in money then paid to said H. S. Kimmel; that said automobile was not in fact the property of H. S. Kimmel, but was a stolen automobile and the property of a third person; that by reason thereof and particularly by reason of the careless and negligent acts of the above named individual defendant, the chattel mortgage of plaintiff was rendered worthless and said security of no value and thereby plaintiff sustained damage in the sum of $337.50, and both of said defendants are liable to plaintiff in said amount.''

A copy of the purported bill of sale was marked exhibit ''A,'' attached to the amended complaint and by reference made a part thereof.

A demurrer to the amended complaint was sustained, and an order dismissing the action with prejudice was entered. From that order, plaintiff has appealed.

■ When the fictitious bill of sale, referred to in the amended complaint as exhibit "A," was presented to appellant for the second time, there was added thereto the following words:, "Subscribed and (affirmed) before me this First day of March, 1930. Notarial Seal. H. W. Carr (Signature of Notary Public.)"

It will be noticed that the writing of the notary public, to which is attached his notarial seal, is not an acknowledgment nor a certification. 1 C. J. 745, states:

"It [an acknowledgment] is a proceeding provided by statute whereby a person who has executed an instrument may, by going before a competent officer or court and declaring it to be his act and deed, entitle it to be recorded, or to be received in evidence without further proof of execution, or both."

The writing in question constitutes but the jurat of an affidavit.

"The jurat is that part of an affidavit where the officer states that the same was sworn to before him. The jurat is merely evidence that the oath was duly administered, and in the absence of a jurat, such fact may be proved otherwise. It has been held not a necessary part of the affidavit." Johns American Notaries (3rd ed.), p. 83, § 113.

A fair construction of the words added to the fictitious bill of sale would not justify appellant in concluding. that they imported verity to that instrument.

■ There is another reason why the demurrer to the amended complaint should have been sustained. It contains no allegation that the notary did not proceed with caution, or that he failed or neglected to make an investigation, and it does allege that the impostor

represented himself to the defendant notary public as Earl E. Anderson. A notary public is not a guarantor of the correctness of his certificate, and a cause of action based upon the making of a certificate by a notary public must be predicated upon negligence for failure to exercise the proper degree of care. The following language used in the case of *Barnard v. Schuler*, 100 Minn. 289, 110 N. W. 966, was quoted with approval by the court in *Ehlers v. United States Fidelity & Guaranty Co.*, 87 Wash. 662, 152 Pac. 518:

"A notary public or other officer in taking an acknowledgment may be deceived, no matter how careful he may be in investigating the identity of a party who represents himself to be the person described in and who executed the instrument; and to hold the officer in such cases absolutely liable in case it should afterwards appear that he was mistaken and his certificate was in·fact untrue is too rigid a rule to be practical or just. The bond of a notary public in this state by the terms of the statute is conditioned for the faithful discharge of the duties of his office, and when he accepts the office and gives the bond he represents to the world that he is competent to discharge the duties of his office, and it cannot be said that he has faithfully discharged the duties of his office in a given case if he neglects to exercise such care as reasonably prudent and competent notaries would exercise in taking and certifying acknowledgments. If he fails to exercise such due care, and loss results therefrom, he and his sureties are liable for the loss resulting proximately therefrom. It is not a defense in such a case that he acted in good faith and did the best he knew how; for, if he does not personally know the party appearing before him, he must inform himself as to his identity.

"We accordingly hold that a notary public is not a guarantor of the absolute correctness of his certificate of acknowledgment, nor does he undertake to certify that the person acknowledging the instrument owns or has any interest in the lands therein described; but

he does undertake to certify that the party personally appearing before him is known to him to be the person described in and who executed the instrument. If the notary does not personally know the party appearing before him, he should proceed with caution, and either decline to certify to the acknowledgment or investigate the question of the identity of the party with such care and prudence as the gravity of the case demands, and only certify to his identity upon being clearly satisfied of the fact as a result of such investigation. If a notary public certifies to an acknowledgment of an instrument without such personal knowledge and investigation, he is guilty of negligence, and he and his sureties are liable for all damages proximately resulting therefrom."

In view of the fact that appellant is required to predicate his action for damages against the notary public upon the negligence of that official, if any, we are confronted by this question: What is the proximate cause of appellant's loss? It appears from the amended complaint that Earl E. Anderson had no title. The impostor Kimmel represented himself as being Earl E. Anderson. The title to the car was in a third person. Since the ownership of the car was never vested in any "Earl E. Anderson," appellant's loss was not due to the fact that it received the bill of sale with the jurat attached. The proximate cause of appellant's damage was that Kimmel had no title to the car.

Judgment affirmed.

TOLMAN, C. J., MITCHELL, PARKER, and STEINERT, JJ., concur.