[No. 394-2.    Division Two.    November 24, 1971.]

ALEXANDER MEYERS et al., *Plaintiffs*, v. NORMAN ALEXANDER MEYERS et al., *Defendants*, EUGENE HIGGINS et al., *Respondents*, JAMES C. TENNY et al., *Appellants*.

*A. R. Hart* (of *Wolf, Hackett, Beecher & Hart*), for appellant.

*George Nickell* (of *Nickell, Quinn & Mah*), for respondent.

PEARSON, J.—This appeal involves the scope of the duty imposed upon a notary public to ascertain the identity of a person seeking the notary's certificate on a deed.

The appellant, Genny A. Tenny, was a duly commissioned notary public who took an acknowledgment on a quitclaim deed. The signature of the grantor was forged by the grantee and the deed was used to clear title in the grantee, who subsequently conveyed the property by war-

ranty deed to a purchaser. The true owner of the property (the named grantors on the quitclaim deed) succeeded in upsetting the sale by an action to quiet title. The unsuccessful purchasers were allowed $5,801.04 in damages on their third-party complaint against the notary public and her husband.[1] The forger apparently has absconded with the purchase money.

Appellants are James C. Tenny and Genny A. Tenny, his wife (the notary). Respondents are the defendants, Eugene Higgins and his wife, Patricia Higgins, the abortive purchasers. Alexander Meyers and wife were plaintiffs and owners of the property in question. They are not parties to the appeal. Their son, Norman Meyers, a named defendant, was the person who executed the forged deed. The notary received a $1 fee for taking the acknowledgment.

At the conclusion of the evidence on respondents' third-party complaint, appellant challenged the legal sufficiency of the evidence to support a prima facie case of liability against her. The refusal of the trial court to sustain that challenge is a principal assignment of error on appeal. To answer this assignment, it is necessary to review the legal duty imposed upon the notary who takes the acknowledgment on a deed, and then ascertain whether respondents' evidence supports a prima facie case of breach of such duty.

The statutes creating the office of notaries public (RCW 42.28.010, *et seq.*) establish no specific standards of conduct for the notary to follow in taking acknowledgments. RCW 42.28.040(2) simply empowers the notary "to take acknowledgments of all deeds and other instruments of writing, and certify the same in the manner required by law; . . ." It is clear, however, that the legislature intended to make notaries official public officers, required to perform their statutory function in the same manner as any other public official. *See* RCW 42.28.030.

The manner in which deeds are to be acknowledged is prescribed in RCW 64.08.050, which provides:

---

[1] The judgment included $5,000 as the purchase money and an award for attorney's fees and costs.

The officer, or person, taking an acknowledgment as in this act provided, shall certify the same by a certificate written upon or annexed to the instrument acknowledged and signed by him and sealed with his official seal, if any he has, and reciting in substance that the person, or persons, known to him as the person, or persons, whose name, or names, are signed to the instrument as executing the same, acknowledged before him that he or they, executed the same freely and voluntarily, on the date stated in the certificate. Such certificate shall be prima facie evidence of the facts therein recited.

In the early case of *Ehlers v. United States Fid. & Guar. Co.*, 87 Wash. 662, 152 P. 518 (1915), it was held that the notary must exercise reasonable care in ascertaining the identity of the parties described in and who execute the instrument, and the question of whether or not reasonable care has been exercised is usually a question of fact.

That general statement of the rule was adhered to in *James, Inc. v. Carr*, 170 Wash. 29, 14 P.2d 1113 (1932), the court stating specifically that the notary public is not a guarantor of the correctness of his certificate and that his liability for an incorrect certificate is based upon the law of negligence.

Since RCW 64.08.050 requires the notary to certify that the person seeking the acknowledgment is "known to him" (the notary) we conclude that the statute itself imposes a positive duty upon the notary to ascertain the identity, or at least to exercise reasonable care in that regard.

In the instant case, respondents' evidence established that the notary's certificate was false, in that the person executing the deed had forged the names of the grantors. Presumably then, the notary had failed to identify the person seeking the acknowledgment. In addition, appellant, called as an adverse witness, testified that she did not personally know the persons seeking the acknowledgment, they had not been introduced to her, and she could not, from her personal knowledge at least, recall what evidence she required of their identity before affixing her signature to the certificate.

█ Under these circumstances, we are of the opinion that respondents clearly established a prima facie case of negligence. We reject the contention made here that it was incumbent upon respondents to establish a general standard of care of notaries public in the community and then affirmatively show that such standard was not followed in order to establish a prima facie case. Such general standard of care should not be required where a positive statutory duty is imposed, nor has such a general standard been required in cases dealing with the liability of the notary. See Ehlers v. United States Fid. & Guar. Co., supra and James, Inc. v. Carr, supra.

█ We do think that evidence of a general standard of practice is relevant to the question of negligence, to show either the presence or absence of reasonable care. However, where a plaintiff has proved the failure of the notary's identification, and consequently the falsity of the notary's certificate, it is our view that a prima facie case of negligence is established and the burden of persuasion should shift to the notary, to show that she was deceived through no lack of reasonable care on her part. Clapp v. Miller, 56 Okla. 29, 156 P. 210 (1916).[2] The court's refusal to sustain the challenge was proper.

Appellant's next assignment of error relates to the trial court's exclusion of her testimony as to her usual business practice of identifying persons seeking certificates of acknowledgments. The context of the offer of proof was as follows. Mrs. Tenny testified that she could not remember the specific transaction in question, although she made an entry of it in her business records. She did not record the means she used in identifying the grantors in the deed, and she could not testify from her personal knowledge as to the specific identification required from the forger. Her lack of personal knowledge was due to the numerous business transactions she handled every day, both as a notary and a motel operator. However, Mrs. Tenny unequivocally testi-

[2]Clapp v. Miller was overruled on other grounds in Amsden v. Johnson, 74 Okla. 295, 158 P. 1148 (1916).

fied that she always demanded identification from those seeking to have documents notarized and that her procedures never varied. She sought to introduce evidence of her usual business practice in regard to identifying persons seeking notarizations. The trial court sustained an objection to this testimony and that exclusion is assigned as error. The offer of proof was to the effect that appellant manages a 56-unit motel in Bellevue, Washington which operates on a credit basis, *i.e.*, credit cards and personal checks; that in granting credit, appellant requires identification by driver's license and credit cards; that she requires the same identification when acknowledging deeds and has invariably followed such procedure.

The trial court rejected the offer on the grounds that "habit" testimony is inadmissible to establish that one has exercised reasonable care on the specific occasion involved. It is our view that the court erred in excluding the offered evidence.

■ It is generally true that habit evidence, sometimes referred to as character evidence or evidence of a proneness for, or experience free from, previous accidents is not admissible on the issue of negligence. *See Kangley v. Rogers,* 85 Wash. 250, 147 P. 898 (1915); *Chilberg v. Parsons,* 109 Wash. 90, 186 P. 272 (1919). However, the cases which have rejected habit evidence have usually done so because of the attempt to use such evidence to establish the character or reputation of a defendant as either careful or careless. *Kangley v. Rogers, supra.* In this case, the evidence was offered to establish what acts were in fact done by appellant to ascertain the identity of the grantors where, because of the lapse of time and volume of transactions, it was impossible for her to truthfully have personal knowledge of that specific transaction. In our view, her business practice, which she said never varied, was both relevant and admissible on the question of what she did on the specific occasion in question. *See* 1 B. Jones, The Law of Evidence § 191, at 332 (5th ed. 1958).

In our view, allowance of such evidence is analogous to

allowing evidence of the general practice of a business concern to establish proof of mailing letters. In *Matsko v. Dally*, 49 Wn.2d 370, 301 P.2d 1074 (1956), at 376, the Supreme Court stated:

> The rule is that, when an office handles such a large volume of mail that no one could be expected to remember any particular letter or notice, proof of mailing may be made by showing (1) an office custom with respect to mailing, and (2) compliance with the custom in the specific instance.

Appellant's testimony that she never varied from her usual practice on identifications would, in our opinion, satisfy requirement (2) above, as it would in the mailing situation.

Likewise, the notary who handles a large volume of transactions within and outside the scope of his notary transactions is not unlike the bank that deals with a multitude of financial transactions and which is generally permitted to show evidence of its custom and the custom of other banks in dealing with checks and the like. *See* 8 A.L.R.2d 446 (1949).

To deny the notary the right to show his usual practice is to deny testimony that may have real probative value—even more probative, perhaps, than a positive declaration of what the notary remembered having done on the specific occasion many months in the past. Those who have engaged in notary work—and many lawyers do so gratuitously—are hard pressed to recall the specifics of notarizations performed a month previously. However, those who realize the important implications of the act of taking an acknowledgment have an established practice of identification which is from a probative standpoint superior to their memories.

It is our view that the evidence should have been allowed by the trial court to establish what appellant did in the way of ascertaining the identity of the grantors on the deed. The credibility and weight of such testimony and whether or not it constituted reasonable care would be for

the trial court to determine. Since Mrs. Tenny had no other means than fabrication to establish what she did on the occasion of the forgery, and since her business practice was established and constant, it is our opinion that the trial court abused its discretion in refusing to allow the proof and that Mrs. Tenny should be allowed a new trial.

We have considered but are not persuaded by appellant's remaining assignment of error. The claim is that the purchasers relied upon the warranty deed rather than the quitclaim deed in completing their part of the sale. It was the prerogative of the trial court to find and conclude that the forged quitclaim deed was a proximate cause of respondents' loss. *See McDonald v. Plumb,* 12 Cal. App. 3d 374, 90 Cal. Rptr. 822 (1970).

Judgment reversed and remanded for a new trial.

PETRIE, C.J., and ARMSTRONG, J., concur.

Petition for rehearing denied January 18, 1972.

Review granted by Supreme Court March 21, 1972.