[No. 42287.   En Banc.   November 16, 1972.]

ALEXANDER MEYERS et al., *Plaintiffs*, v. NORMAN ALEXANDER MEYERS et al., *Defendants*, EUGENE HIGGINS et al., *Petitioners*, JAMES C. TENNY et al., *Respondents*.

*George T. Nickell* (of *Nickell, Quinn & Mah*), for petitioners.

*Arthur R. Hart* (of *Wolf, Hackett, Beecher & Hart*), for respondents.

STAFFORD, J.—This appeal involves a forged deed. The forgers, without the true owners' knowledge, executed a quitclaim deed which, when recorded, appeared to clear title in the forgers. Thereafter, the forgers sold the property, subject to an existing mortgage, to the purchasers. Appellant[1] is the notary public who took the acknowledgment on the forged deed. Respondents (petitioners in this court) are the abortive purchasers. The forgers have absconded with the purchase money.

The true owners brought a quiet title action against respondents, who in turn brought a third-party action against appellant. The court quieted title in the true owners and appellant was found liable to respondents for having negligently failed to determine the identity of the forgers

---

[1] Genny A. Tenny, the notary, and her husband have been referred to in the Court of Appeals as appellants, they will be referred to as appellants herein to be consistent with the position we take with reference to the opinion of the Court of Appeals. For further simplification, Mrs. Tenny will be referred to as the sole appellant.

when they presented their signatures to be notarized. The Court of Appeals reversed the trial court (5 Wn. App. 829, 491 P.2d 253 (1971)) and the case is here on a petition to review. The petition and answer raise all assignments of error presented to the Court of Appeals. Since we agree with the Court of Appeals' disposition of the principal assignment of error, we adopt its following statement.

"At the conclusion of the evidence on respondents' third-party complaint, appellant challenged the legal sufficiency of the evidence to support a prima facie case of liability against her. The refusal of the trial court to sustain that challenge is a principal assignment of error on appeal. To answer this assignment, it is necessary to review the legal duty imposed upon the notary who takes the acknowledgment on a deed, and then ascertain whether respondents' evidence supports a prima facie case of breach of such duty.

"The statutes creating the office of notaries public (RCW 42.28.010, et seq.) establish no specific standards of conduct for the notary to follow in taking acknowledgments. RCW 42.28.040(2) simply empowers the notary 'to take acknowledgments of all deeds and other instruments of writing, and certify the same in the manner required by law; . . .' It is clear, however, that the legislature intended to make notaries official public officers, required to perform their statutory function in the same manner as any other public official. See RCW 42.28.030.

"The manner in which deeds are to be acknowledged is prescribed in RCW 64.08.050, which provides:

"The officer, or person, taking an acknowledgment as in this act provided, shall certify the same by a certificate written upon or annexed to the instrument acknowledged and signed by him and sealed with his official seal, if any he has, and reciting in substance that the person, or persons, known to him as the person, or persons, whose name, or names, are signed to the instrument as executing the same, acknowledged before him that he or they, executed the same freely and voluntarily, on the date

stated in the certificate. Such certificate shall be prima facie evidence of the facts therein recited.

"In the early case of *Ehlers v. United States Fid. & Guar. Co.*, 87 Wash. 662, 152 P. 518 (1915), it was held that the notary must exercise reasonable care in ascertaining the identity of the parties described in and who execute the instrument, and the question of whether or not reasonable care has been exercised is usually a question of fact.

"That general statement of the rule was adhered to in *James, Inc. v. Carr*, 170 Wash. 29, 14 P.2d 1113 (1932), the court stating specifically that the notary public is not a guarantor of the correctness of his certificate and that his liability for an incorrect certificate is based upon the law of negligence.

■ "Since RCW 64.08.050 requires the notary to certify that the person seeking the acknowledgment is "known to him" (the notary) we conclude that the statute itself imposes a positive duty upon the notary to ascertain the identity, or at least to exercise reasonable care in that regard.

"In the instant case, respondents' evidence established that the notary's certificate was false, in that the person executing the deed had forged the names of the grantors. Presumably then, the notary had failed to identify the person seeking the acknowledgment. In addition, appellant, called as an adverse witness, testified that she did not personally know the persons seeking the acknowledgment, they had not been introduced to her, and she could not from her personal knowledge at least, recall what evidence she required of their identity before affixing her signature to the certificate.

■ "Under these circumstances, we are of the opinion that respondents clearly established a prima facie case of negligence. We reject the contention made here that it was incumbent upon respondents to establish a general standard of care of notaries public in the community and then affirmatively show that such standard was not followed in order to establish a prima facie case. Such general standard of care should not be required where a positive

statutory duty is imposed, nor has such a general standard been required in cases dealing with the liability of the notary. *See Ehlers v. United States Fid. & Guar. Co., supra* and *James, Inc. v. Carr, supra.*

■ "We do think that evidence of a general standard of practice is relevant to the question of negligence, to show either the presence or absence of reasonable care. However, where a plaintiff has proved the failure of the notary's identification, and consequently the falsity of the notary's certificate, it is our view that a prima facie case of negligence is established and the burden of persuasion should shift to the notary, to show that she was deceived through no lack of reasonable care on her part. *Clapp v. Miller,* 56 Okla. 29, 156 P. 210 (1916) [overruled on other grounds in *Amsden v. Johnson,* 74 Okla. 295, 158 P. 1148 (1916)]. The court's refusal to sustain the challenge was proper." (Footnote omitted.) 5 Wn. App. 831-33.

In light of our discussion of the inference of negligence in *Zukowsky v. Brown,* 79 Wn.2d 586, 600, 488 P.2d 269 (1971), we agree with the Court of Appeals that respondents having established the failure of appellant's identification, and consequently the falsity of her notary's certificate, the burden of persuasion shifted to the notary to show that she was deceived through no lack of reasonable care on her part. In *Zukowsky* we pointed out that when evidence or circumstances infer negligence, the procedural effect of that inference may vary depending upon the degree of probability of the truth of the inference together with the appropriate, stated policy considerations that underlie it. *Zukowsky* involved a case of ordinary negligence for which there was no underlying policy reason to do more than treat the inference of negligence as one form of circumstantial evidence, the procedural effect of which was to carry the plaintiff past a nonsuit. In the instant case, however, the justification for shifting the burden of persuasion to the notary, once a forgery has been determined, is the probability that the notary was negligent in ascertaining the identity of the forger and the strong public policy of

ensuring the accuracy of notarial certifications. *See gener-
ally* W. De Funiak, *John's American Notary and Commis-
sioner of Deeds Manual* (5th ed. 1942); L. Greene, *Law of
Notaries Public* (1967); R. Rothman, *Customs and Prac-
tices of Notaries Public and Digest of Notary Laws in the
United States* (1970). Thus, we hold that if it is established
that a notarized signature is forged, the burden of persua-
sion shifts to the notary to prove by a preponderance of the
evidence that he exercised reasonable care in ascertaining
the identity of the person whose signature he notarized.[2]

We next consider those assignments of error which relate
to appellant's attempt to show that she exercised reason-
able care.

As pointed out by the Court of Appeals, it was not in-
cumbent upon respondents to introduce evidence of a gen-
eral standard of care of notaries public in the community
and then to establish that appellant had violated such
standard. The standard of care is set by RCW 64.08.050 as
"known to him." Thus, the question for the trier of fact is
whether a reasonable man, following the procedures used
by the notary to establish identity, would have been satis-
fied that those presenting their signatures for notarization
were the persons they claimed to be.

The trial court refused appellant's offer of proof as
to the practice of other notaries. This was error. The prac-
tices of other notaries are probative of whether the proce-
dures used by a notary, in establishing the identity of the
persons whose signatures he certifies, are reasonable.[3] Nev-
ertheless, mere conformity with custom is not necessarily
to be equated with the exercise of reasonable care, because
the custom itself may not meet the "reasonable man" stand-
ard. In the final analysis, the ultimate question of whether
the procedures used by the notary on the occasion of the

---

[2]*See* WPI 24.05, 6 Wash. Prac. 142 (1967).

[3]The general custom of notaries, however, cannot be established by
evidence of the practice of a single notary other than appellant. *Com-
pare Swartley v. Seattle School Dist. 1,* 70 Wn.2d 17, 421 P.2d 1009
(1966) with *Miller v. Staton,* 58 Wn.2d 879, 365 P.2d 333 (1961).

forgery in question were reasonable remains for the trier of fact.

The trial court also refused appellant's offer to prove her habit in identifying persons whose signatures she notarizes. She offered to establish the procedure she used regularly to ascertain their identity since she was unable to establish, by direct evidence, what her procedures had been on the specific occasion at bar. The offer was rejected on the ground that "habit" testimony is not admissible to establish that one has exercised reasonable care on the specific occasion in question.

■ Generally, we have not allowed habit evidence on the ultimate issue of negligence, *i.e.,* evidence establishing a characteristic of carefulness of the party whose action is questioned. *See, e.g., State v. Lewis,* 37 Wn.2d 540, 225 P.2d 428 (1950); *Kangley v. Rogers,* 85 Wash. 250, 147 P. 898 (1915). On the other hand, we have permitted the use of habit evidence for the purpose of establishing the existence of a specific fact. *See, e.g., Jaquith v. Worden,* 73 Wash. 349, 132 P. 33 (1913); *Allard v. Northwestern Contract Co.,* 64 Wash. 14, 116 P. 457 (1911). *See also,* 1 J. Wigmore, *Evidence* §§ 92 and 98 (3d ed. 1940). Thus, a notary is entitled to introduce testimony concerning his business habit in determining the identity of persons whose signatures he notarizes. Such testimony, however, must be admitted for the limited purpose of establishing the means by which the notary determined the identity of the person whose signature he notarized on the specific occasion of the forgery as opposed to the purpose of establishing a characteristic for carefulness.

If the testimony offered consists only of self-serving statements of the notary as to his business habit it is not admissible. A notary may, however, give non-self-serving testimony of his business habit which includes, for example, his recollection, refreshed by records kept, as to the means used to establish identity, or by testimony of witnesses who have observed his notarial practice, or by the introduction of his records under the Uniform Business

Records Act. Such evidence of habit is admissible for the above-mentioned purposes.[4] The credibility and weight of such testimony and whether it constitutes reasonable care, however, is still for the trier of fact to determine.

Appellant offered to prove, by the testimony of her husband and herself, that she had a business habit of requiring identification, including driver's license and credit cards, of all persons to whom they lent credit in their motel business and of all persons whose signatures she notarized. The testimony as to appellant's practice in determining identity of persons to whom she lent credit was irrelevant and properly excluded. The trial court erred, however, by refusing appellant's offer to prove her regular business practice as a notary, by other than self-serving testimony.

Appellant's claim that the forgery was not the proximate

---

[4]The Court of Appeals found an analogy between appellant's proffered testimony of usual practice and the rule allowing evidence of a general business custom to establish proof of mailing letters. At page 835 of *Meyers v. Meyers*, 5 Wn. App. 829, 491 P.2d 253 (1971), the court said:

In *Matsko v. Dally*, 49 Wn.2d 370, 301 P.2d 1074 (1956), at 376, the Supreme Court stated:

The rule is that, when an office handles such a large volume of mail that no one could be expected to remember any particular letter or notice, proof of mailing may be made by showing (1) an office custom with respect to mailing, and (2) compliance with the custom in the specific instance.

Appellant's testimony that she never varied from her usual practice on identifications would, in our opinion, satisfy requirement (2) above, as it would in the mailing situation.

The analogy is not appropriate for two reasons. First, appellant's self-serving statement that she never varied from her usual practice does not establish that on the occasion in question she *complied* with it. Second, if the test were properly applied and appellant was required to testify that she complied with her business habit at the time of the forgery, she would be able to testify directly as to the procedures she used to establish the identity of the forgers. The need for habit or custom testimony would thus be significantly reduced, if not eliminated. At best it would be merely corroborative.

The mailing rule is unique and should be restricted to its context. It is more strict than either the habit or custom rule we adopt here because from it flows a presumption of receipt. Neither a presumption nor even an inference of reasonable care flows from the introduction of habit or custom testimony under the circumstances of this case.

cause of respondents' loss, because respondents relied upon the warranty deed given by the forgers and not on the forged quitclaim deed, was properly answered by the Court of Appeals. (5 Wn. App. at 836.) It is sufficient to say that the finding of proximate cause was the prerogative of the trial court.

Lastly, appellant assigns error to the trial court's failure to find that the respondents were contributorially negligent. In essence, appellant argues that respondents had certain information that should have made them suspicious, and, therefore, they were negligent in purchasing the property from the forgers. Upon a review of the record, however, we cannot conclude as a matter of law that the respondents were contributorially negligent. Thus, the decision remained one for the trier of fact.

The judgment of the trial court is reversed and the case remanded for a new trial.

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, HALE, NEILL, WRIGHT, and UTTER, JJ., concur.