[No. 12493.   Department One.   April 13, 1915.]

EDWARD J. MARGETT et al., Respondents, v. JOHN E. WILSON
et al., Appellants.[1]

APPEAL — HARMLESS ERROR — REFUSAL OF CONTINUANCE.   Under
Rem. & Bal. Code, § 297, providing that new matter in a reply shall
be deemed controverted without further pleading addressed thereto,
the refusal of the court to grant a continuance to enable defendants
to reply to new matter set up in the plaintiffs' amended reply, filed
a few days before the case was set down for trial, was not preju-
dicial error, where the defense thereto was gone into fully at the
trial.

WITNESSES—COMPETENCY—TRANSACTIONS WITH DECEASED PERSONS.
An affidavit of a defendant that he and his deceased wife had con-
veyed away a tract of land, being admissible against him as a decla-
ration against interest, would not be inadmissible against their chil-
dren as hearsay; since whatever interest the children have comes
through their deceased mother, and the alienation, if made by the
parents, would be complete as against the children.

LOST INSTRUMENTS—LOST DEEDS — EVIDENCE — SUFFICIENCY.   The
rule that one who relies upon a lost deed to sustain his title must
establish the original existence of the deed, its loss, and the ma-
terial parts thereof by convincing evidence is met by the affidavit of
the grantor setting forth that a quitclaim deed was executed and
delivered by him to plaintiff's grantor, describing the property, the
kind of deed, and the consideration therefor, which affidavit was
corroborated by evidence showing that plaintiff's grantor and plain-
tiffs regularly paid the taxes each year thereafter, that the quitclaim
was given to the holder of a mortgage for $500 on the land in con-
sideration of that debt and the payment of $25 additional, and that
the land at the time of the quitclaim deed was worth only $400; al-
though defendant testified that the $25 was given as earnest money
on an agreement to pay $1,200 therefor, and that no part of the
mortgage debt has ever been paid.

Appeal from a judgment of the superior court for Kitsap
county, French, J., entered April 4, 1914, upon findings in
favor of the plaintiffs, in an action to quiet title, tried to the
court.   Affirmed.

*Garland & McLane*, for appellants.

*C. D. Sutton* and *Hindman & Yakey*, for respondents.

'Reported in 147 Pac. 628.

MOUNT, J.—This action was brought by the plaintiffs to quiet title to 40 acres of land in Kitsap county. The defendants, after denying the allegations of the complaint, alleged by way of cross-complaint that they were the owners of the property, and prayed to have the title quieted as against the claims of the plaintiffs. The plaintiffs, for an amended reply, after denying the allegations of the affirmative defense, alleged that they and their predecessors in interest have had and held paper and color of title to said property and the whole thereof; that said property is vacant and unoccupied land; and that these plaintiffs and their predecessors have paid all taxes thereon for more than 7 successive years prior to the date of the commencement of this action. The case was tried to the court without a jury, and resulted in findings in favor of the plaintiffs, and a decree quieting the title in the plaintiffs. The defendants have appealed.

The facts are as follows: Prior to the year 1898, the defendant John E. Wilson and his wife, Minnie M. Wilson, were the owners of the land in controversy. On the 20th day of January of that year, Mr. and Mrs. Wilson executed and delivered to William W. Wilson, a brother of John E. Wilson, a promissory note for $500, secured by a mortgage upon the land in controversy. This note and mortgage were negotiated by William W. Wilson to J. E. Crimmons, and afterwards, in the year 1904, came into the hands of John B. Yakey. The note at that time was past due and Mr. Yakey was threatening to foreclose upon the property. It is undisputed that this note and mortgage were never paid.

After the maturity of the note, according to the evidence on the part of the plaintiffs, Mr. Yakey was about to bring a suit to foreclose the mortgage. He stated to Mr. John E. Wilson that it would cost about $25 to foreclose the mortgage and that he, Yakey, would surrender the note and pay to Mr. Wilson $25 for a quitclaim deed to the property; and that Mr. and Mrs. Wilson thereupon agreed to this and

executed and delivered to Mr. Yakey a quitclaim deed of
the property. Mr. Yakey testified that this deed was never
recorded, was lost, and could not be found. In the year
1906, Mrs. Wilson died, leaving surviving her husband,
John E. Wilson, Elmer Wilson, a son, and Sadie B. Wilson,
a daughter. At the time this action was brought, Elmer
Wilson was past 24 years of age, and Sadie was in her 15th
year. It is conceded that no administrator was ever ap-
pointed for the estate of Minnie M. Wilson, deceased.

In the year 1909, after Mr. Yakey discovered that the
quitclaim deed was lost, Mr. John E. Wilson made an affi-
davit as follows:

"John E. Wilson being first duly sworn on oath deposes
and says: That he is the identical John E. Wilson, who,
with his wife Minnie M. Wilson, made, executed and delivered
to one William W. Wilson a certain mortgage on the fol-
lowing described land in Kitsap county, Washington, to wit:

"The southeast quarter (SE¼) of the southeast quarter
(SE¼) of section ten (10), township twenty-three (23)
north, range one (1) east W. M., containing forty (40)
acres more or less.

"That said mortgage was given to secure the sum of $500,
with interest thereon at the rate of seven (7) per cent per
annum from the date of said mortgage, to wit, January 20,
1898, and the same was thereafter duly filed for record in
the office of the auditor of Kitsap county, Washington, and
the same is now of record therein in volume 27 of Mortgages
at page 306.

"That thereafter said mortgage and the note secured
thereby passed into the hands of J. B. Yakey, of Port
Orchard, Washington, who started or was about to start a
foreclosure of the same against this affiant and his said wife.
That no part of the principal or interest due on said note
or said mortgage was ever paid by this affiant or his said
wife.

"That on the 2nd day of December, or thereabouts in the
year 1904, this affiant in order to satisfy said mortgage and
in payment of the note secured thereby, and for the further
consideration of the sum of $25 in cash paid to this affiant
and his said wife, Minnie M. Wilson, by the said J. B. Yakey,

this affiant and his said wife, Minnie M. Wilson, made, executed and delivered to the said J. B. Yakey a quitclaim deed to all of the said land above described.

"This affiant further states that said sum of $25 was actually paid to this affiant by the said J. B. Yakey, and said deed was executed for the purpose and upon the express condition that it was to satisfy and cancel said mortgage and relieve this affiant and his said wife from any further liability on said note or the said mortgage."

This affidavit was subscribed and sworn to on the 16th day of December, 1909, before a notary public.

The evidence on the part of the plaintiff also shows that, immediately after the date when this quitclaim deed was given to Mr. Yakey in 1904, he thereafter paid the taxes regularly upon the premises until February 27, 1913, when he sold and conveyed the premises by warranty deed to the plaintiffs. The plaintiffs' evidence also shows that the land was unimproved and unoccupied up to the time this action was brought.

The evidence on the part of the defendants was to the effect that Mr. Yakey represented to the defendant John E. Wilson that he held the note and mortgage for collection and demanded of Mr. Wilson that he pay the amount due thereon; that Mr. Wilson refused to make the payment upon the ground that he had not received any consideration for the note; that thereupon Mr. Yakey told the defendant that his client would pay $1,200 for the property; that Mr. Wilson and his wife agreed to take the $1,200, and $25 thereof was paid to bind the bargain; that he and his wife executed a deed to the property, but that the deed was never delivered because the balance of the $1,200 was never paid; that subsequently the deed was destroyed. The defendant John E. Wilson also testified that he offered to pay the taxes on the property each year, but that when he attempted to pay the taxes he was informed by the treasurer that the taxes had already been paid, and that the treasurer refused the tender which he made. Upon the question of the payment of taxes,

the record very clearly shows that the treasurer and his deputy, upon two different occasions, asked Mr. Wilson if he desired to pay the taxes upon this particular tract of land, and that Wilson informed them that he did not: "They beat me out of that eight or ten years ago; I do not own it."

In reference to the affidavit hereinabove set out, John E. Wilson admitted his signature thereto, and that he had sworn to it, but testified that he did not know the contents of it at the time. The evidence very clearly shows, however, that the affidavit was read to Mr. Wilson by Mr. Yakey at the time it was prepared, and on a subsequent date a week later, at the time the affidavit was signed, it was read to Mr. Wilson by the notary who administered the oath. It was shown that the land, at the time the quitclaim deed was given, was worth about $400.

Numerous errors are assigned by the appellants which we think require but brief notice. It appears that when the amended reply of the plaintiffs was filed, the case was set down for trial on the following Monday. The defendants asked for a continuance upon the ground that they were not ready to make reply to the new matter contained in the amended reply; that by the rules they were entitled to three days in which to file a reply to the plaintiffs' amended reply. The court denied this motion for a continuance. It is true no formal reply was made by the defendants. But the new matter in the amended reply of the plaintiffs was deemed to be controverted, Rem. & Bal. Code, § 297 (P. C. 81 § 283), and was gone into fully at the trial, and clearly no prejudice resulted by reason of no written reply being filed by the defendants.

It is claimed that the affidavit of Mr. Wilson above set out was inadmissible as evidence against the defendants Elmer Wilson and Sadie B. Wilson, because as against them the statements contained in the affidavit were hearsay. Whatever interest Elmer Wilson and Sadie B. Wilson, the children of John E. Wilson and wife, have in the property, comes

through their deceased mother.  If the parents of these children had no interest in the property at the time of the death of Mrs. Wilson, these children certainly have no interest now, because if Mr. and Mrs. Wilson conveyed away the property prior to the death of Mrs. Wilson, the alienation was complete as against their children.  The statements contained in the affidavits are statements of Mr. Wilson against interest and were, therefore, clearly admissible under the statute, against all of the defendants.  Rem. & Bal. Code, § 1211 (P. C. 81 § 1027) ; see, also, 20 Cyc. 1247; *Keller v. McConville*, 175 Mich. 479, 141 N. W. 652.

The appellants argue that one who relies upon a lost deed to sustain his title must establish the original existence of the deed, its loss, and the material parts thereof, by convincing evidence, and cite *Scurry v. Seattle*, 56 Wash. 1, 104 Pac. 1129, 134 Am. St. 1092, to the effect that:

"In order to establish a lost instrument on behalf of a party asserting rights under it, the evidence must be clear and positive, and of such a character as to leave no reasonable doubt as to terms and conditions of the instrument."

The appellants are no doubt correct in their statement of the rule; and the rule is fully met by the evidence in this case.  The affidavit above quoted contains all the necessary elements to show that a quitclaim deed was executed and delivered to Mr. Yakey; it describes the property; the kind of a deed it was; and the consideration therefor.  There was other evidence to the same effect.  But this affidavit clearly establishes all the necessary facts.  One of the principal questions in the case naturally was whether or not Mr. Wilson knowingly made the statements contained in the affidavit.  The evidence is abundant to show that he did, and the court so found.  The trial court evidently did not believe that Mr. Yakey agreed to pay $1,200 for the property when it was not worth the face of the note and mortgage which he held against it at that time.

The evidence shows that, immediately after the execution of the quitclaim deed and ever since up to the time he sold the property to the plaintiffs, Mr. Yakey paid the taxes regularly each year, and that the plaintiffs, after they acquired the title to the property, also paid the taxes; and it is not seriously disputed that Mr. Wilson knew that Mr. Yakey was claiming the ownership of the property. It is conceded that Mr. Wilson made the mortgage hereinabove referred to, and that no part thereof has ever been paid. These circumstances tend very strongly to corroborate the theory of the plaintiffs in the case.

We have carefully read the record and are satisfied that the trial court, upon competent evidence, found correctly from the great preponderance of the evidence that a quitclaim deed was made to the land in question, which was properly acknowledged, the consideration paid, and the deed delivered to Mr. Yakey, and was lost. The evidence is convincing on all these points. We are satisfied that the judgment of the trial court was right. It is therefore affirmed.

MORRIS, C. J., PARKER, HOLCOMB, and CHADWICK, JJ., concur.