[No. 29079. Department Two. September 2, 1943.]

HELEN F. SMYSER et al., Plaintiffs, v. VELMA A. SMYSER
et al., Respondents, SMYSER DISPLAY SERVICE,
INC., Appellant.[1]

*Tyre H. Hollander,* for appellant.

*Scott, Langhorne & McGavick,* for respondents.

ROBINSON, J.—This cause, although not, as contended by
appellant, an action to quiet title, involves the determination of title to real property. A chronological statement of
the background of the case, all of which appears in the
record, will aid in throwing into clear relief the principal
question involved on appeal and materially assist in arriving at a correct answer thereto.

[1]Reported in 140 P. (2d) 959.

In 1939, Velma A. Smyser brought a divorce action against Bert A. Smyser, with whom she had lived in wedlock for twenty-five years. Mr. Smyser had, since 1928, conducted a business, under the name of Smyser Display Service, on certain property at 2016 south Tacoma way, Tacoma, legally described as lots 19 and 20, Prescott's second addition to the city of Tacoma, and lots 1 to 4, inclusive, block 2, of Prescott's Park addition to Tacoma, Washington Territory. In June, 1937, he incorporated the business, adding to the original name the designation "Inc." Ninety-eight of the corporation's one hundred shares were issued to him, and at least seventy-four have always stood in his name.

In preparation for the divorce action, Mrs. Smyser's attorneys took Bert Smyser's deposition. We quote excerpts from his testimony, as given under oath on May 26, 1939:

"Q. That real estate upon which your shop is located is in your name? A. Community property. Q. Community property? A. Yes, sir. Q. It has not been transferred to your corporation? A. No. . . . Q. You have a building on that property owned by you and Mrs. Smyser? A. Yes, sir. . . . Q. You say the property is leased to the Smyser Display Service? A. Yes, sir. Q. What does the lease pay? A. $1.00 a year, if you want to put it that way. . . . Q. The company owns the building? A. No. That is community property. Q. Can you explain why it is included as an asset of the company? A. That is an error."

The divorce action came on for trial in November, 1939. After Mrs. Smyser had testified at some length, the trial was halted and the parties reached an agreement as to a property settlement, which was adopted and confirmed by the trial court in its findings, conclusions, and decree. The premises at 2016 south Tacoma way, that is, the property involved in this action, were awarded to Bert Smyser as his sole and separate property, and Velma Smyser, as shown by the decree which was entered on November 3, 1939, and is an exhibit in this case, was directed to convey to him her community interest.

In November, 1941, Velma Smyser brought an action against her former husband, Bert Smyser, alleging that he defrauded her in the property settlement, in that he had concealed his ownership of accounts in several savings and loan associations. She prayed for a recovery of one-half thereof. These accounts stood in the name of Bert Smyser, but his father intervened in the action, claiming that they were, in fact, his property. In this claim, he was energetically supported by his sons, Bert Smyser and Ray Smyser, both of whom testified to that effect. Judgment was entered for Velma Smyser in the sum of $5,888.12. This judgment was affirmed, on appeal, by this court. *Smyser v. Smyser*, 17 Wn. (2d) 731, 137 P. (2d) 107.

While that appeal was pending, the judgment not having been superseded, Velma Smyser levied on the property at 2016 south Tacoma way, as well as other property. Bert Smyser, joining with his present wife, Helen Smyser, brought this action to enjoin the sale of the property last mentioned, on the ground that it was their community property. The Smyser Display Service, Inc., that is, Bert Smyser in corporate form, intervened with respect to the property at 2016 south Tacoma way, and claimed title to it, alleging, in a complaint verified by Bert Smyser, that Bert Smyser and Velma Smyser had quitclaimed it to the corporation on June 1, 1938, by deed which had never been recorded and which it could not produce, since it had been destroyed in a fire which consumed the intervener's place of business in 1940. This phase of the action then became, in effect, one to establish a lost deed. At the end of the trial, the trial judge held that the intervener's evidence was insufficient to establish the alleged conveyance, and later refused to grant a new trial and entered a judgment dismissing its action. From that judgment and the order denying a new trial, this appeal was taken.

From what has been said, it is apparent that the intervener, Smyser Display Service, Inc., assumed quite a burden in alleging in its complaint (verified by its president, Bert Smyser) that, on June 1, 1938, Bert Smyser and his

then wife, Velma Smyser, had conveyed the property involved to the intervener, since, as we have seen, that same Bert Smyser testified, under oath, less than a year later (May 26, 1939), that the property was then the community property of himself and Velma Smyser, and had not been conveyed to the corporation, but was occupied by it under lease, and that, if it had been included among the assets of the corporation, that was an error. Furthermore, he had, in November, 1939, participated in a divorce settlement wherein the court was asked to set the property aside to him as his sole and separate property and direct· Velma Smyser to convey to him her community interest in it, all of which was done.

The attorneys for Velma Smyser in this case, being the same who represented her in the divorce action, propounded eight written interrogatories, to which Bert Smyser returned extremely evasive answers. In the interest of brevity, they will not be set out here. It will be sufficient to quote his response to an order of the court specifically requiring him to make one of them more definite and certain:

"That the said Bert A. Smyser does not recollect positively where said deed was signed by himself and wife but to the best of his knowledge it was signed either at their home where they were then living or at the office of Bert A. Smyser, 2016 south Tacoma way, and if not signed at either of said places that it must have been signed at the notary's office before whom their acknowledgments were taken. That as stated before Bert A. Smyser does not recall the name of the notary taking said acknowledgment; that during said period of time Bert A. Smyser had numerous business details to attend to relative to the setting up of said corporation which it is impossible for him to remember as to the exact time and place after this lapse of time."

The foregoing answer he formally acknowledged under oath on November 28, 1942.

At the trial, he testified that the corporation was organized in June or July, 1937, and that its books were set up by his brother's auditor, a man named "L-a-n-c-e"; that the

minute books and most of the papers of the corporation were destroyed in a fire in August, 1940, everything, except one ledger "and the first sheet of our journal." This sheet, with charred edges, purported to show, as of January 1, 1938, the assets transferred to the corporation by Bert Smyser, in exchange for its capital stock, and includes an item: "Land, $650." This, Smyser said, was in the handwriting of Auditor Lance. He further testified that Lance drew the deed on a regulation printed form which he had in his brief case. "He was a regular notary public and accountant." The deed was dated January 2, 1938, though made out after that. It was a quitclaim deed, signed by himself and his wife in his office, in the presence of the office girl and in the presence of Lance, who, as notary, took the acknowledgment. This testimony was given at the trial on December 18, 1942, and indicates an astonishing recovery of recollection on the part of the witness in the twenty-day period which had elapsed since his hereinbefore quoted statement in the bill of particulars was made and acknowledged under oath on the preceding November 28th.

Ray Smyser was the second witness for the plaintiff. He stated, among other things, that the auditor who, his brother testified, drew and notarized the deed, had worked for him about six months; that his name was spelled "L-a-n-t-z"; and that his full name was "S. A. Lantz." He stated that he had advised his brother to incorporate his business, and that this was done in the summer of 1937, although the "papers and stuff were drawn up shortly after January 1, 1938." The delay was caused because Lantz was so busy working for the witness that he did not have time to draw them before that date. The witness testified that he saw the deed. It was a quitclaim, on a blank form filled out in the auditor's handwriting and signed by Bert and Velma Smyser. He remembered it because Mr. Curtis, one of the directors of the corporation, said: "Here is the deed. I have it all signed up. Take a look at it." He testified that

he saw the notarial seal, although he did not remember the notary's name.

As we have hitherto seen, the execution which the plaintiff seeks to enjoin was issued on a judgment holding that certain savings and loan accounts standing in the name of Bert Smyser were, in fact, his, and not the property of his father, who intervened, claiming the accounts, just as the plaintiff corporation has here intervened, claiming the real property standing in the name of Bert Smyser. While testifying in this action, Ray Smyser sought to throw a cloud on the judgment upon which the execution was issued, by testifying that those accounts actually belonged neither to his father nor to his brother, Bert Smyser, but to him. When pressed as to whether he had not testified in the original action that they belonged to his father, he refused to affirm or deny, but took refuge in saying that he could not remember what he testified to in that case. The record of the original case was not introduced in this case. However, the court is familiar with it. Three of the five judges participating in the hearing of this appeal participated in the hearing of the appeal of the original case in which the decision was handed down but a few months ago. *Smyser v. Smyser*, 17 Wn. (2d) 731, 137 P. (2d) 107.

During the progress of the trial of the instant case, Bert Smyser located the young woman who had worked in his office at the time the deed is alleged to have been given, or rather, since the date alleged was June 1, 1938, at the time it is now claimed to have been given. She testified, in part, as follows:

"Q. Did you ever see a deed in the files of any kind? A. We had a corporation, form quit-claim. Q. From whom was the deed, do you know? A. It was from Mr. and Mrs. Smyser. Q. To whom? A. To the Smyser Display. Q. The corporation? A. Yes, sir."

She did not remember the date of the deed. It had a notarial seal on it, but she did not remember the notary's name but thought it was Lance. She was not present when the deed was signed. She did not testify as to its contents,

that is, as to the property conveyed or the consideration therefor. It is upon the testimony given by this witness that appellant appears principally to rely. It is said, in its brief:

"If the testimony of Bert A. Smyser stood alone without other corroborating testimony the decision of the court on the existence or non-existence of the deed possibly could be sustained. But in view of the uncontradicted testimony of Mrs. *Buckner*, the bookkeeper, who left the company about July, 1938, *and never talked to anyone about the matter before taking the witness stand*, . . . there simply is no room left for any other conclusion than the existence of the deed." (Italics ours.)

It is evident that appellant's counsel has mistaken the name of this witness, which was Becker, not Buckner, and has also overlooked the fact that, in response to his own interrogation, she testified as follows:

"Q. You have never talked this matter over with me until just about two minutes until two o'clock today? A. That is right. Q. Anybody else except Bert Smyser? A. No, I haven't."

Of course, it may still be true, as appellant says, in its brief: "The details she related came fresh from her memory after a lapse of almost five years."

It is also conceivable that her testimony related to some other deed. She did not testify that the deed she saw covered the property involved, or in any other way tie it to that property, but did testify that the deed she saw was on a corporation form, which would indicate that it was a deed in which the corporation was the grantor, not the grantee.

Velma Smyser denied that she ever signed the alleged deed to the corporation, and explained that, at the time it was claimed to have been executed, her estrangement from her husband was complete and she was about to start her divorce action and would not have signed any kind of a conveyance at his request. She further testified that she had never signed any conveyance of the property involved, except that conveying her community interest therein to

Bert Smyser, as directed by the court in its interlocutory decree of divorce entered in November, 1939.

■ The court held orally, at the close of the trial, that, in a case of this kind, plaintiff's proof must be strong and convincing, citing: 1 Jones on Evidence, Civil Cases (4th ed.) 441, § 227. We have said, in our own decisions:

"The evidence must be clear and positive, and of such a character as to leave no reasonable doubt as to terms and conditions of the instrument." *Scurry v. Seattle,* 56 Wash. 1, 104 Pac. 1129.

See, also, *Margett v. Wilson,* 85 Wash. 98, 147 Pac. 628; *Neill v. Griner,* 85 Wash. 329, 147 Pac. 1137; *Kelliher v. Clark,* 120 Wash. 175, 206 Pac. 924.

■ The appellant asserts that the evidence given by its three witnesses overwhelmingly preponderates. To our minds, it was not sufficient in content to meet the burden of proof required. But we need not discuss that point, because the trial judge found the evidence not merely deficient in quantity, but in quality. He stated, in his oral decision: "I can't accept Mr. Bert Smyser's testimony on any material matter in this case. The court can't believe it."

As to the testimony of the other witnesses for the appellant, he said, in his memorandum opinion:

"The court was not impressed with the testimony of Ray Smyser and could give no credence to his testimony, and the court has serious doubts as to the veracity of the testimony of the bookkeeper and is unable to give to her testimony any considerable credibility."

The trial judge, of course, had the opportunity of observing the attitude and demeanor of appellant's three witnesses, which opportunity is denied to us, but had he not recorded his impressions, we must, of necessity, from our examination of the bare typewritten record alone, have come to the same conclusion that he did as to the evidence of at least two of the three.

■ There are several subsidiary questions raised. The trial was recessed late on a Friday afternoon for the pur-

pose of allowing the defendant to procure certificates from the secretary of state to the effect that there was no commissioned notary in the state of Washington during the period of six months before or after January 1, 1938, named Lance or Lantz. These were admitted in evidence on the following Monday morning, and defendant's case was closed. Plaintiff then sought to introduce the 1938 and 1939 income tax reports of Smyser Display Service, Inc., to show that it then claimed the property in question. The court sustained the objection that they were not proper rebuttal. Ray Smyser was then called and testified that the auditor's name was neither Lance nor S. J. Lantz, but Edwin Linz, and a 1940 Christmas card was offered in evidence, signed "Edwin Linz," which, he said, had refreshed his recollection. This was objected to as not properly identified, and the objection was sustained. Plaintiff's counsel then moved for a delay sufficient to permit him to check with the secretary of state's office as to whether there was a commissioned notary in January, 1938, named "Edwin Linz." The trial court refused a delay of the trial for that purpose. All three of these rulings are contended to be reversible errors, but, plainly, all three are rulings concerned with the orderly conduct of the trial, a matter wholly within the discretion of the trial judge. We find no abuse thereof.

Finally, it is contended that the court erred in not granting a new trial on the ground of newly discovered evidence, but, as the affidavits relied on in this connection are not incorporated in the statement of facts, we cannot review that assignment.

The judgment appealed from is affirmed.

SIMPSON, C. J., BEALS, BLAKE, and GRADY, JJ., concur.