[No. 29846-9-III.   Division Three.   September 6, 2012.]

THE ESTATE OF VANCE BROWNFIELD, *Appellant*, v. BANK OF
AMERICA, NA, ET AL., *Respondents*.

554

*Stephen D. Phillabaum*; and *Karl W. Kime* (of *Kime Law Office*), for appellant.

*Michael A. Roozekrans* (of *Michael A. Roozekrans PLLC*), for respondent Bank of America, NA.

*Thomas F. Webster* (of *Webster Law Office PLLC*), for respondent Karen Rhodes.

¶1 SIDDOWAY, A.C.J. — This case calls upon us to decide whether a bank is required by the Financial Institution Individual Account Deposit Act, chapter 30.22 RCW, to disburse funds from a decedent's account in accordance with the most recent written contract of deposit it can locate in its files when its own electronic records and other evidence suggest that a different deposit contract was later signed but was misfiled or misplaced. We hold that a party relying on a contract of deposit must prove that its terms were memorialized by a writing meeting the requirements of the act. If the required writing cannot be found, secondary evidence is admissible to establish that it was nonetheless prepared and signed.

¶2 We reject the position of the estate of Vance Brownfield (Estate) that the bank in this case was bound by the most recent contract of deposit it was able to locate in its files. Because there was conflicting evidence as to whether a superseding writing was prepared, signed, and lost, however, summary judgment was inappropriate. We reverse the order dismissing the Estate's claims and remand for trial.

## FACTS AND PROCEDURAL BACKGROUND

¶3 Vance Brownfield died on December 31, 2008. At the time of his death he maintained accounts at five different banks and credit unions, holding deposits, collectively, of almost $800,000.00. The terms of several of the accounts had been changed by Mr. Brownfield in the year before his death to identify two of his and his late wife's nieces as payable on death (POD) beneficiaries. In this action, the personal representative of Mr. Brownfield's estate challenges Bank of America's disbursement of $200,973.27 from two accounts to Karen Rhodes, Mr. Brownfield's niece, after determining that the bank was unable to locate signed deposit agreements reflecting POD terms for the accounts as required by RCW 30.22.060.

¶4 This appeal follows the trial court's dismissal of the Estate's claims on summary judgment. The evidence submitted by the parties in connection with their cross motions for summary judgment established that Mr. Brownfield's wife passed away in December 2006. He and his wife had no children. In June 2008, he named one of his late wife's nieces, Suzanne Valach, as a POD beneficiary on an account he maintained with Banner Bank. In September 2008, he telephoned his own niece, Ms. Rhodes (his sister's daughter) and asked her to come to Spokane to take him to do some banking; he told Ms. Rhodes to bring her driver's license and Social Security card. On September 25, Ms. Rhodes traveled to Spokane from Chewelah, where she lived, to

meet with her uncle as requested. She was driven to Spokane by a friend. When the three met, Mr. Brownfield asked Ms. Rhodes' friend to drive him to Numerica Credit Union and Bank of America for the purpose of making changes to some of his accounts.

¶5 The three traveled first to the credit union. Ms. Rhodes' friend waited in the car while Mr. Brownfield and Ms. Rhodes went into the credit union to conduct his business. There, Mr. Brownfield and Ms. Rhodes met with William Carson, a service representative who knew Mr. Brownfield well. Mr. Carson later recalled Mr. Brownfield coming into the bank with Ms. Rhodes on September 25 for the purpose of naming her a POD beneficiary on one of his two credit union accounts. Mr. Carson testified by affidavit that "[i]t was very clear to me that Vance Brownfield knew and understood precisely what he wanted to accomplish by setting up an account with a payable on death designation." Clerk's Papers (CP) at 286. The court was presented with proper documentation signed at Numerica on September 25 changing one of Mr. Brownfield's accounts to a POD account benefiting Ms. Rhodes.

¶6 Ms. Rhodes' friend then drove Mr. Brownfield and Ms. Rhodes to Bank of America. Ms. Rhodes again went into the bank with her uncle and was present when Mr. Brownfield asked a bank teller, later identified as Beth Theodorson, to change his accounts to POD accounts with Ms. Rhodes as beneficiary. Ms. Rhodes told Ms. Theodorson that she believed her uncle intended to name her as beneficiary to only two of his accounts at the bank (he had a total of five), which her uncle confirmed, providing Ms. Theodorson with checkbooks for the two accounts he wished to modify. Ms. Theodorson made copies of Ms. Rhodes' driver's license and Social Security card. The court was presented with the bank's records establishing that on September 25, Ms. Theodorson entered the intended changes into the bank's computerized records, transforming the two accounts at issue to POD accounts and identifying Ms. Rhodes as the beneficiary.

¶7 Ms. Rhodes could not recall whether Mr. Brownfield signed anything at the bank, and Ms. Theodorson had no specific recollection of her dealings with the two. But Ms. Theodorson testified by affidavit as to her certainty that she would have obtained signed contracts of deposit, referred to by the bank as its "signature cards" for the accounts, as follows:

> 5. If a ... customer wanted to designate a person as a payable on death beneficiary on an existing account they would have to sign a Change Authorization form as well as a new signature card verifying their election to designate the person as a payable on death beneficiary. *The first step is to make sure the necessary forms are filled out and signed.*
>
> 6. *After the customer signs the Change Authorization form and a new signature card,* the information is then inputted into the bank's computer system.
>
> 7. *I would not input a change into the Bank's computer system unless the customer had actually signed the Change Authorization form and the new signature card.*
>
> . . . .
>
> 11. I do not remember Vance Brownfield or Karen Rhodes. However, *I would not have inputted the information adding Karen L. Rhodes' name to the accounts ... and designating her relationship as a beneficiary to the respective accounts into Bank of America's computer system unless the account owner Vance Brownfield signed the Change Authorization form and a new signature card making such designation.*

CP at 276-77 (emphasis added). Following Mr. Brownfield's visit to the bank on September 25, all statements for the two bank accounts at issue reflected that they were POD accounts, with Ms. Rhodes as beneficiary.

¶8 After Mr. Brownfield's death, Banner Bank disbursed $97,912.76 to Suzanne Valach from the account on which she had been designated Mr. Brownfield's POD beneficiary. Numerica disbursed $68,382.04 to Ms. Rhodes from the account on which she had been designated beneficiary. Bank of America disbursed $200,973.27 to Ms. Rhodes from

the two accounts for which its computer records showed her as POD beneficiary.

¶9 The personal representative of Mr. Brownfield's estate thereafter learned that Bank of America's most recent signature cards for the two accounts whose funds it disbursed to Ms. Rhodes showed single ownership by Mr. Brownfield as of February 19, 2008. The cards were not marked "superseded" as was the bank's practice when account terms were modified by a new signature card. The bank was unable to locate any signature card reflecting a change made to either account on September 25.

¶10 The personal representative commenced this action against the bank and Ms. Rhodes, seeking to recover the $200,973.27 based on claims for breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, and negligence. After reviewing the parties' summary judgment submissions and hearing argument, the trial court denied the Estate's motion for summary judgment and granted the bank's motion, joined in by Ms. Rhodes, dismissing the Estate's claims. The Estate's motion for reconsideration was denied. The Estate appeals.

## ANALYSIS

¶11 The Estate contends that a bank in Washington may not pay a putative POD beneficiary when there is no contract of deposit, signed by the owner, providing for POD terms. It also contends that the existence of the required written contract of deposit may not be proved by secondary evidence. The Estate has not analyzed these two issues within the context of its four legal claims but implicitly relies on breach of contract for recovery against the bank and conversion for recovery against Ms. Rhodes.

¶12 On appeal from an order of summary judgment, we engage in the same inquiry as the trial court. *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). The standard of review is de novo. *Id.* Summary judgment is

proper where there is no genuine issue as to a material fact and the moving party is entitled to a judgment as a matter of law. CR 56(c).

¶13 Bank accounts in Washington are subject to the Financial Institution Individual Account Deposit Act (Act), chapter 30.22 RCW. Among the types of account authorized by the Act are "Trust and P.O.D. accounts," defined by the Act to include "accounts payable on request to a depositor during the depositor's lifetime, and upon the depositor's death to one or more designated beneficiaries." RCW 30.22.040(18). Regardless of the type of account, a contract for deposit must comply with RCW 30.22.060, which provides in part:

> The contract of deposit shall be in writing and signed by all individuals who have a current right to payment of funds from an account.

The Estate argues that this provision must be read to bind the bank to the last contracts of deposit signed by Mr. Brownfield that it was able to locate and produce, those being the change forms and signature cards that he signed in February 2008 removing his late wife from the account and leaving him the accounts' sole owner. The bank and Ms. Rhodes argue that the undisputed evidence of Mr. Brownfield's intent to name her the POD beneficiary of the two accounts suffices to defeat the Estate's claim and, alternatively, that the evidence establishes that new contracts of deposit must have been signed on September 25 even if they could not be found in the bank's records.

¶14 " 'Statutory interpretation begins with the statute's plain meaning.' " *Puget Sound Energy v. Dep't of Revenue*, 158 Wn. App. 616, 620, 248 P.3d 1043 (2010) (quoting *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010)), *review denied*, 171 Wn.2d 1010 (2011). The argument that Mr. Brownfield's undisputed intent to name Ms. Rhodes a POD beneficiary is sufficient to support the bank's disbursement to her fails in

light of the Act's plain language. The bank's transfer of funds to a POD beneficiary is authorized by RCW 30.22-.100(4) and (5), which provide that funds remaining on deposit in a POD account belong to the POD beneficiary on the depositor's death and that a bank's transfer to the beneficiary "pursuant to the terms of this section are declared to be effective by reason of the provisions of the account contracts involved and this chapter and are not to be considered as testamentary dispositions." RCW 30.22-.100. The bank's authority to transfer to a beneficiary therefore depends on the existence of a contract complying with the Act.

¶15 The bank nonetheless argues that RCW 30.22.030(1), which provides that the Act is to be "liberally construed and applied to promote the purposes of the chapter," supports the trial court's consideration of Mr. Brownfield's undisputed intent. The Act has three express purposes, all oriented toward greater consistency and clarity in the bank's dealings with customers and claimants. RCW 30.22.020(1)-(3). None of the Act's purposes would be promoted by allowing an account owner's perceived intent to overcome RCW 30.22.060's requirement of a written contract of deposit. Its third express purpose—to advance simple and consistent law as to the validity and effect of nontestamentary transfers of deposits upon the death of the depositor, RCW 30.22.020(3)—would be frustrated by allowing perceived intent to substitute for the required writing.

¶16 While Ms. Rhodes' designation as a POD beneficiary was therefore required to be by a written contract of deposit signed by Mr. Brownfield, there is nothing in RCW 30.22.060 that can reasonably be read to suggest that a properly prepared and signed contract ceases to control the rights of the parties if misplaced, misfiled, or even inadvertently discarded by a bank. The ownership and disbursement provisions of the Act depend on the terms of the depositor's contract and the account designations, with

no requirement that the contract be present in the bank's files at the time of disbursement. *See* RCW 30.22.060 (requirements), .100 (ownership after death of survivor).

¶17 As a matter of common law, the loss or destruction of a memorandum does not deprive it of effect under the statute of frauds. RESTATEMENT (SECOND) OF CONTRACTS § 137 (1981). "Although the Statute of Frauds was designed to serve an evidentiary purpose, it is not a rule of evidence. In cases of loss or destruction, the contents of a memorandum may be shown by an unsigned copy or by oral evidence." *Id.* § 137 cmt. a. It is well settled in Washington that parties may prove that a required writing was prepared but has been lost, including required writings such as wills, deeds, warehouse receipts, bills of lading, and promissory notes, by presenting sufficient evidence of a document's existence and contents. *See, e.g., Smyser v. Smyser,* 19 Wn.2d 42, 49, 140 P.2d 959 (1943); *Johnson v. Wheeler,* 41 Wn.2d 246, 248, 248 P.2d 558 (1952); *Deglow v. Smith,* 77 Wn.2d 128, 129, 459 P.2d 786 (1969) (lost deeds); RCW 11.20.070 (lost wills); *Lutz v. Gatlin,* 22 Wn. App. 424, 427, 590 P.2d 359 (1979) (lost or unavailable personal guaranty); RCW 62A.7-402, -601 (lost warehouse receipts and bills of lading).

¶18 The right to present such proof is reflected in our rules of evidence. ER 1004(a) provides that if all originals of a document are lost or have been destroyed, then other evidence of a document's contents is admissible. ER 1008 makes clear that this is true even "when an issue is raised . . . whether the asserted writing ever existed." In such a case, it provides that whether the document ever existed "is for the trier of fact to determine as in the case of other issues of fact." ER 1008.

¶19 Several provisions of the Act contemplate that in the event of a discrepancy between the most recent contract in the bank's files and other records of the bank that indicate that a different and more recent contract was signed by a depositor, the contract found in the file does not definitively dictate the bank's duties of disbursement. RCW 30.22.120

provides that the bank may rely with acquittance on "the form of the account and the terms of the contract of deposit at the time the payments are made," not on "the last written contract in its files" or equivalent language. The provision goes on to state that the bank is not released or discharged from liability if it makes a distribution with actual knowledge of the existence of a dispute or adverse claim. RCW 30.22.130 provides that the protection provided to the bank by other sections of the Act "ha[s] no bearing on the actual rights of ownership to deposited funds" by or between, inter alia, a depositor's personal representative and the beneficiary of a POD account. The Act provides that in the event of actual knowledge of a dispute, the bank may disburse funds conditioned on a distributee's providing an adverse claim bond. RCW 30.22.220. In light of these provisions, a bank cannot disregard the form of account and terms of deposit reflected in its most recently updated records—here, its electronic records, supported by its employees' belief that a POD designation was effectively made but misplaced—in deference to physical files it has reason to believe are incomplete.

¶20 In this case, undisputed evidence establishes that Mr. Brownfield knowingly and effectively changed one of his Numerica credit union accounts to a POD account with Ms. Rhodes as beneficiary on September 25, and traveled to the bank immediately thereafter to make the same change to two of his bank accounts. Undisputed evidence establishes that Mr. Brownfield instructed Ms. Theodorson to change his two accounts at issue to POD accounts with Ms. Rhodes as beneficiary and that Ms. Theodorson took at least some of the steps necessary to do so. The only question is the extent to which Ms. Theodorson or other bank employees departed from customary bank procedures. Did Ms. Theodorson misplace the signed contracts and thereby prevent entry of the usual notation that the contracts they replaced were superseded? Or did she fail entirely to obtain signed contracts? The bank's and Ms. Rhodes' evidence that

contracts were prepared but lost is sufficient to create a jury issue.

¶21 *Torgerson v. State Farm Mutual Automobile Insurance Co.*, 91 Wn. App. 952, 963, 957 P.2d 1283 (1998) does not require a different result. In *Torgerson*, an underinsured motorist (UIM) insurance waiver case, this court held that "[t]he public policy underlying the requirement of a written rejection [of UIM coverage]" militated against the admission of evidence of habit or routine to establish procurement of a written waiver. *Id.* Evidence of habit and routine, standing alone, would establish only that an insurer had adopted a policy of procuring written waivers, not that it had met what our Supreme Court has identified as "the burden of obtaining a knowing written rejection in order to avoid the statutory requirement for UIM coverage." *Clements v. Travelers Indem. Co.*, 121 Wn.2d 243, 255, 850 P.2d 1298 (1993). *Clements* further observed that under the Washington insurance statute, "UIM coverage becomes part of every liability coverage by operation of law unless the insured party in writing agrees to a waiver or rejection." *Id.* (emphasis omitted). "By default, UIM coverage is in the same amount as the insured's third party liability coverage." *Am. Commerce Ins. Co. v. Ensley*, 153 Wn. App. 31, 38, 220 P.3d 215 (2009) (citing RCW 48.22.030(3)). The burden on an insurer to obtain a UIM waiver is imposed in a unique context in which production of the written waiver is necessary to overcome what is otherwise the implicit inclusion in the policy of UIM coverage equal to the amount of liability coverage, and in which the insurer alone will bear the financial penalty if its records prove incomplete. *Torgerson* did not purport to address or modify longstanding Washington law that the existence of a lost document, including one subject to a statute of frauds, may generally be established by secondary evidence.

¶22 Summary judgment in favor of the bank and Ms. Rhodes was inappropriate, however, because the Estate

presented evidence raising an issue of fact whether new contracts of deposit were signed. The Estate presented evidence that the bank was unable to locate signed contracts reflecting the POD designation. It presented the testimony of the bank's CR 30(b)(6) designee that after a new signature card has been signed, the bank's tellers, "when there's free time," would ordinarily pull old signature cards and mark them as superseded, CP at 35, and demonstrated that this had not been done to Mr. Brownfield's earlier signature cards for the accounts at issue. This evidence is enough to raise a question of fact.[1]

¶23 We reverse the trial court's dismissal of the Estate's breach of contract claim against the bank and its conversion claim against Ms. Rhodes, and remand for further proceedings consistent with this opinion.

SWEENEY, J., concurs.

¶24 KULIK, J. (dissenting) — RCW 30.22.060 requires banks to maintain a signed contract of deposit for each account. The majority relies on cases involving lost documents. *See, e.g., Smyser v. Smyser*, 19 Wn.2d 42, 140 P.2d 959 (1943); *Deglow v. Smith*, 77 Wn.2d 128, 459 P.2d 786 (1969). To prove a lost instrument, the one proposing its validity must show its execution, its delivery, and its

---

[1] The Estate also represents that Ms. Rhodes "testified that [Mr.] Brownfield never signed anything." Br. of Appellant at 8. But apart from supporting this assertion by citing to its own briefing below, it identifies only Ms. Rhodes' deposition testimony that "I don't remember that he [signed anything]" and "I don't recall that he signed anything." CP at 391. The record does not reveal any testimony by Ms. Rhodes that her uncle did *not* sign anything at the bank or, as represented by the Estate, that he "never signed anything." And Ms. Theodorson's testimony that she would not have changed the bank's computer records without first obtaining Mr. Brownfield's signature on new contracts of deposit is itself substantial evidence of preparation and execution of contracts. *See Meyers v. Meyers*, 5 Wn. App. 829, 834, 491 P.2d 253 (1971) (evidence of business practice may be offered to establish what acts were in fact done where practice never varied and "where, because of the lapse of time and volume of transactions, it was impossible for [the witness] to truthfully have personal knowledge of [a] specific transaction"), *aff'd*, 81 Wn.2d 533, 503 P.2d 59 (1972).

contents. *Deglow*, 77 Wn.2d at 129. These elements must be proved by evidence that is clear and positive and of such character as to leave no reasonable doubt as to the terms and condition of the instrument. *Id.* (quoting *Scurry v. City of Seattle*, 56 Wash. 1, 2-3, 104 P. 1129 (1909)). In other words, the evidence must be clear, cogent, and convincing. *Id.*

¶25 The facts here do not establish by clear, cogent, and convincing evidence that Mr. Brownfield executed the required contract or that a contract existed. The majority relies on statements made by William Carson, a Numerica service representative, who had no knowledge as to whether Mr. Brownfield executed a signed contract at Bank of America (BOA). The majority also relies on evidence presented by Beth Theodorson.

¶26 Ms. Theodorson does not remember meeting with Mr. Brownfield and Karen Rhodes, but she testified as to her certainty that she would have obtained signed contracts of deposits before inputting any information into the bank's computer system. In contrast, BOA's designee under CR 30(b)(6) believed it was BOA policy for employees who handled contract changes to write "superseded" on the old contract and "updated" on the new contract. Computer records indicate that on September 25, 2008, changes were made to the two accounts. However, BOA cannot locate any updated, signed signature cards showing a change on September 25, 2008.

¶27 Significantly, Ms. Rhodes testified that she did not recall that Mr. Brownfield signed anything during their visit to BOA:

Q. Okay. Did your Uncle Vance sign the same document you did?

A. I don't remember that he did.

Q. Do you recall if he signed any documents?

A. I don't recall that he signed anything.

Clerk's Papers at 391.

¶28 The two BOA accounts at issue do not show any change designating that the accounts were "updated" on September 25, 2008. Instead, the last change signed by Mr. Brownfield states "supersedes" when he took his deceased wife's name off the accounts.

¶29 BOA cannot prove the execution or existence of a signed card by clear, cogent, and convincing evidence. Consequently, we cannot assume that the card was lost. I would reverse and grant summary judgment in favor of the estate.